Lewis F. LESTER

v.

M. Jane E. POWERS.

Supreme Judicial Court of Maine.

Argued June 19, 1991.
Decided Aug. 2, 1991.

Jed Davis (orally), Jim Mitchell & Jed Davis, P.A., Augusta, for plaintiff.

Gerald Petruccelli (orally), Petruccelli, Cox & Martin, Portland, for defendant.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

COLLINS, Justice.

Lewis F. Lester appeals from a summary judgment in the Superior Court (Kennebec County, *Alexander,* J.). The court concluded Lester could have no recovery on his claims for libel, slander, and tortious interference with contract[1] against his former student, Mary Jane E. Powers. We affirm.

Powers was a Colby College undergraduate majoring in psychology. In early 1985, during her junior year, she took a class in abnormal psychology from Lester, then an associate professor. One of the classes was a discussion of homosexuality—specifically, the appropriateness of classifying homosexuality as a disorder when the person is unhappy about his or her sexual orientation, but not when the person is happy.

During this time, Powers was coming to understand that she was a lesbian, and this process was causing her considerable internal turmoil. She had not, at that point, made public her sexual orientation beyond a few friends in the Colby community; her only attempt to discuss the issue with her mother had been painful.

In the class discussion, at least one student made comments to the effect that "gays are sick"; Lester questioned the appropriateness of the differential classification of the two classifications of homosexuality, and said that he had gay friends in the mental health profession who themselves did not understand why they were "that way." Powers understood his tone of voice to indicate disapproval.

An objective observer might not have found the class discussion hostile toward homosexuality; in fact, one of the students present later stated that "[n]o reasonable view of the class could see it that way" and that it was in no way unusual for a classroom discussion of a controversial topic. Lester denies any suggestion that he expressed personal prejudice against homosexuals or even allowed such expressions in class discussions.

Whether or not Powers overreacted, however, she undisputedly was upset. After the class, she went immediately to an assistant dean and complained that she had found Lester's handling of the subject offensive. She repeated that assertion later to various students, faculty members, and members of the college administration. Although she had other classes and independent studies supervised by Lester, she testified that she avoided him, insofar as possible, for the remainder of her Colby undergraduate career. She did not, however, initiate any formal complaint, nor did she

---

1. Lester's tortious interference with contract claim is not at issue in this appeal.

ever approach Lester to discuss her feelings.

Lester had previously been affiliated with Colby in a non-tenure-track position, as a part-time faculty member and part-time clinical psychologist, for over ten years. He then started working toward tenure; this process culminated in a tenure review in the fall of 1986, after Powers graduated from Colby. As a part of the tenure review process, the Committee on Promotion and Tenure solicited letters from former students. Powers did not respond to this invitation to comment before the Committee's deadline, October 15.

Following a visit to Colby after the deadline, however, Powers contacted the Dean of the Faculty and asked if it was too late to comment. The Dean invited her to do so, even though the deadline had passed. Powers then wrote the letter that underlies the present case. The letter primarily related Powers's version of the class discussion that upset her, together with several other minor incidents involving Lester that she found distasteful, and concluded:

> I don't want to use this letter as a way to "get even" with Professor Lester. I have found him to be entirely knowledgeable and competent in his field, and I have received valuable assistance from him on one or two occasions in my work. But as an ex-member of the college committee on sexual harassment, I know that a student should not ever be made to feel uncomfortable or intimidated in her/his learning on account of gender or sexual orientation, and I sadly feel this was definitely the case for me. I also know of others who still feel intimidated, much as I have and for the same reasons, and who have not written to add their input to this decision; I thank this Committee for the opportunity to express my (and their) opinion that Professor Lewis Lester should not be tenured.

Upon receiving the letter, the Dean distributed it to the Committee. The Committee asked for a review and response from the Psychology Department, which prepared a reply. The Committee tentatively voted not to recommend Lester for tenure. At its subsequent, final vote, the Committee recommended that Lester not be granted tenure.

Lester petitioned for reconsideration. He prepared a detailed rebuttal of all the reasons for his tenure denial, including a lengthy criticism and refutation of Powers's letter.[2] Upon reconsideration, the Committee reversed itself and recommended that Lester be granted tenure.

The Dean of the Faculty thereupon transmitted to the President of the College the Committee's recommendation that Lester receive tenure. The President, however, reviewed Lester's file independently, concluded that Lester should not receive tenure, and made that recommendation to the board of trustees, who denied tenure to Lester.[3]

Lester filed a verified complaint in the Superior Court in February 1988 seeking damages from Powers for libel and tortious interference with contract; he also sought punitive damages. In February 1989, following discovery, Powers moved for a summary judgment on the basis that her letter expressed opinions and not facts, that Lester had consented to all tenure procedures by virtue of his employment contract and thus had consented to possibly defamatory statements about him, and that Powers's letter did not cause the denial of tenure. The court denied the motion, while granting Lester's simultaneous motion to amend the complaint to incorporate a claim for slander based on Powers's oral statements about him to other members of the Colby community.

Powers again moved for summary judgment in August 1990 on the basis that she enjoyed a "qualified privilege," citing our decision in *Onat v. Penobscot Bay Medical Center*, 574 A.2d 872 (Me.1990), and assert-

---

**2.** The record does not explain how Lester came into possession of Powers's letter in a version that identified her; all of the other student letters in the record have been altered in such a way as to conceal the identity of the writer.

**3.** The President's affidavit states that he would have made the same recommendation to the Board even in the absence of Powers's letter.

ing that there was no evidence in the record generating an issue of material fact as to whether she had lost the privilege. Following a hearing, the court granted summary judgment. With regard to the letter, the court concluded that

> defendant would have a conditional privilege regarding her comments made in the tenure consideration process. Frank and sometimes critical evaluations of a person's job performance are vital to employee rating, promotion or job change processes. If those who know most about one's job performance are deterred from frank evaluations by fear of defamation actions, and recommendations then come to be discounted as benign pablum, we all lose. Job movers and seekers will be left to the gut and necessarily arbitrary instincts of employment decisionmakers who act without confidence that they have the accurate evaluation history so vital to predicting future performance. To avoid this problem and bolster the integrity of the job evaluation process, persons who are expected to make comments on employment qualifications and do so in the normal channels of an employment review are entitled to a conditional privilege, *Gautschi v. Maisel*, 565 A.2d 1009, 1011 (Me.1989). *See also True v. Ladner*, 513 A.2d 257, 262 (Me.1986), approving a jury instruction which implicitly recognized a conditional privilege.

Examining the record, the court found no factual support for the suggestion that Powers made the statements in the letter knowing them to be false or recklessly disregarding whether they were true or false; instead, the court found that the record could support only the conclusion that Powers sincerely believed the statements in the letter.

With regard to Powers's oral statements to members of the Colby community, the court concluded that they conveyed constitutionally protected statements of opinion; to the extent that those opinions had factual implications, the court found the record contained no evidence of knowing falsehood, or reckless disregard of truth or falsity.[4]

Following the court's grant of summary judgment for Powers, Lester filed a motion requesting findings of fact and conclusions of law. Treating the motion as one for reconsideration, the court denied it. Lester now appeals.

I.

We review the Superior Court's grant of summary judgment to determine whether, taking the facts in the record in the light most favorable to the party against whom summary judgment was granted and giving that party the full benefit of all favorable inferences that may fairly be drawn from that evidence, the court erred in concluding that there is no genuine issue as to any material fact and the prevailing party is entitled to a judgment as a matter of law. *Spickler v. Greenberg*, 586 A.2d 1232, 1233 (Me.1991). *See also Gautschi v. Maisel*, 565 A.2d 1009, 1011 (Me.1989); *Estes v. Smith*, 521 A.2d 682, 683 (Me. 1987).

Lester argues that the Superior Court improperly granted summary judgment because it failed to address any other defamatory statements besides the assertion he was homophobic, and thus ignored an alternative theory on which he could have obtained relief. *See Chasse v. Mazerolle*, 580 A.2d 155, 156–57 (Me.1990). We disagree. The Superior Court's opinion discusses the charge of homophobia specifically, but it also makes it clear that the same analysis applies to all the statements in the letter. We therefore find *Chasse* inapplicable.

---

**4.** We affirm the grant of summary judgment as to Lester's slander claim relating to the oral statements without expressing any opinion on the merits of the constitutional theory applied by the Superior Court. *See Procise v. Electric Mut. Liab. Ins. Co.*, 494 A.2d 1375, 1381 (Me. 1985). Because the record does not show what the statements were, or when, where, or how they were made, a jury could not determine whether the oral statements were false or defamatory, or whether they were made under circumstances giving rise to a privilege. At trial, Powers would have been entitled to a directed verdict on the slander claim. *See Estes v. Smith*, 521 A.2d 682, 683 (Me.1987); *Picard v. Brennan*, 307 A.2d 833, 835 (Me.1973).

## II.

■ Common law defamation consists of:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Restatement (Second) of Torts* § 558 (1977) ("*Restatement*").

■ A defamation claim requires a statement—i.e. an assertion of fact, either explicit or implied, and not merely an opinion, provided the opinion does not imply the existence of undisclosed defamatory facts. *See Lightfoot v. Matthews*, 587 A.2d 462 (Me.1991); *True v. Ladner*, 513 A.2d 257, 261–62 (Me.1986); *Caron v. Bangor Publishing Co.*, 470 A.2d 782, 784 (Me.1984).

■ The statement must be false.[5] *Picard v. Brennan*, 307 A.2d 833, 836 (Me. 1973). It must also be "of and concerning" the plaintiff. *Restatement* § 613(1)(c). The statements in the letter were undisputedly "of and concerning" Lester and tended to injure his professional reputation, and thus if false were actionable at common law irrespective of actual damages to him. *See Saunders v. VanPelt*, 497 A.2d 1121, 1125 (Me.1985).

■ A conditional privilege against liability for defamation arises in settings where society has an interest in promoting free, but not absolutely unfettered, speech.[6] *See, e.g., Onat v. Penobscot Bay Medical Center*, 574 A.2d 872, 874 (Me. 1990) (hospital peer review); *Gautschi v. Maisel*, 565 A.2d 1009, 1011 (Me.1989) (tenure review). *See generally Restatement* § 566, comment b. If a conditional privilege exists, liability for defamation attaches only if the person who made the defamatory statements loses the privilege through abusing it. *See Restatement* § 599. Such an abuse occurs when the person either knows the statement to be false or recklessly disregards its truth or falsity. *Restatement* § 600.[7]

■ Discussion of public officials and public figures on matters of public concern, the U.S. Supreme Court has declared, deserves special favor in a democratic society, and thus such discussion is subject to a conditional privilege—the "First Amendment privilege"—that can be overcome only by clear and convincing evidence of knowledge or disregard of falsity. *New York Times v. Sullivan*, 376 U.S. 254, 279–80, 285–86, 84 S.Ct. 710, 725–26, 728–29, 11

---

**5.** Truth is an affirmative defense in common law defamation. *See Ramirez v. Rogers*, 540 A.2d 475, 477 (Me.1988).

**6.** Certain circumstances, such as legislative debate or testimony in judicial proceedings, give rise to an absolute privilege against liability for defamation. *See, e.g., Vahlsing Christina Corp. v. Stanley*, 487 A.2d 264, 267 (Me.1985). Powers argued unsuccessfully to the Superior Court that Lester had consented to her statements by virtue of having submitted to the tenure review process, and that they were therefore absolutely privileged. *See Restatement* § 583. Although some courts in other jurisdictions have adopted an absolute privilege for comments in the tenure review process, we have never accepted that doctrine. *See Gautschi*, 565 A.2d at 1011. Our past decisions restrict absolute privilege to settings where unconstrained speech is of the highest importance. *See Dineen v. Daughan*, 381 A.2d 663, 665 (Me.1978).

**7.** Knowledge or disregard of falsity has long been known, illogically, as "actual malice." Because "actual malice," a term of art in defamation, has no connection with malice in its usual sense of ill-will, *see Michaud v. Inhabitants of Livermore Falls*, 381 A.2d 1110, 1113 (Me.1978), we avoid the term for the sake of clarity. *See Masson v. New Yorker Magazine, Inc.,* — U.S. —, —, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991); *Michaud*, 381 A.2d at 1114–15. *Accord, Restatement* § 600.

Loss of a conditional privilege through abuse may also occur when the statement is made, not for the purpose of protecting the interest giving rise to the privilege, but out of other motives entirely, such as spite or ill-will. *Restatement* § 600. We have, in the past, also used the term "malice" under these circumstances in its usual sense of ill-will. *See, e.g., Cohen v. Bowdoin*, 288 A.2d 106, 112 (Me.1972). *Cf. Onat v. Penobscot Bay Medical Center*, 574 A.2d 872, 874 (Me. 1990) (using "actual" or "express" malice to refer to ill will, and "implied malice" to refer to knowledge or disregard of falsity).

L.Ed.2d 686 (1964). We do not require clear and convincing evidence, however, to overcome a conditional privilege that arises at common law and not from the First Amendment. *See True,* 513 A.2d at 262–65.[8]

### III.

■ Lester argues that the Superior Court erred in deciding that Powers's statements were made under conditions giving rise to a conditional privilege. He asserts that Maine law recognizes such a privilege only within an employment relationship. *See Gautschi,* 565 A.2d at 1011. We disagree. Conditional privilege is based upon the circumstances of "the occasion upon which the defendant published defamatory matter," *Saunders,* 497 A.2d at 1125, and we use the *Restatement* approach when determining the existence of such circumstances. *Id.* at 1125 n. 3.

The *Restatement* does not prescribe a list of particular settings to which conditional privileges are restricted. Instead, it uses a weighing approach based on the totality of the circumstances, in view of the interests of the publisher and the recipient. *See Restatement* §§ 594–598. Any situation in which an important interest of the recipient will be furthered by frank communication may give rise to a conditional privilege. *See Restatement* § 595, comment j.

Powers wrote the letter in connection with tenure review, an occasion in which the need for candid speech is apparent. *See Gautschi,* 565 A.2d at 1011. She did so in response to a request by Colby College and in furtherance of Colby's interests in the tenure review process. As a recent alumna, she had a close and ongoing relationship with Colby. Under these circumstances, her letter was subject to a conditional privilege.

### IV.

■ Lester asserts that even if Powers's letter would ordinarily have been subject to a conditional privilege, she lost the privilege through abuse because her publication of it was outside ordinary channels, excessive, improper, and not calculated to further the college's interests. *See Restatement* § 599. He contends the letter was "outside ordinary channels" because Powers submitted it after the October 15 deadline for comments. We find his argument unpersuasive. The college solicited the letter and assured Powers that her comments were desired even if they were late. She submitted the letter to the Committee, which reviewed it in the course of its tenure review deliberations. Imposing liability for a letter filed after the announced deadline for comments, when the same letter filed before the deadline would come under a conditional privilege, would be an extraordinarily technical rule, and we decline to adopt it.

■ Lester similarly argues that Powers lost the privilege through abuse because she submitted the letter out of ill-will toward him. Contrary to his assertion, however,

> ... a publication of defamatory matter upon an occasion giving rise to a privilege, if made solely from spite or ill will, is an abuse and not a use of the privilege. However, if the publication is made for the purpose of protecting the interest in question, *the fact that the publication is inspired in part by resentment or indignation at the supposed misconduct of the person defamed does not constitute an abuse of the privilege.*

*Restatement* § 603, comment a. Because the record does not support Lester's contention that Powers submitted the letter *solely* out of spite or ill-will and not to further the tenure review process, we can-

---

**8.** Although malice (in its ordinary sense of ill will or deliberately outrageous misconduct) must be proven by clear and convincing evidence to support an award of punitive damages, *Ramirez,* 540 A.2d at 478; *Tuttle v. Raymond,* 494 A.2d 1353, 1362–63 (Me.1985), this standard of proof has nothing to do with the "actual malice"—that is, knowledge or disregard of falsity—required to overcome a conditional privilege in defamation.

not conclude that she lost her conditional privilege through abuse.

## V.

■ Powers argues that because her letter expressed only her opinion and no statements of fact, it is not actionable. Although Maine's common law of defamation does not allow recovery for statements of opinion alone, *see Lightfoot*, 587 A.2d at 462, deciding whether a statement expresses "fact" or "opinion" is not always an easy task. Our standard looks to the totality of the circumstances:

> [A] comment ... is an opinion if it is clear from the surrounding circumstances that the maker of the statement did not intend to state an objective fact but intended rather to make a personal observation of the facts.

*Caron*, 470 A.2d at 784.[9] Under the *Caron* test, Powers's letter expresses her personal observations, and thus is a statement of opinion rather than of fact. It conveys her subjective evaluation that Lester was homophobic, and that his manner was offensive, insensitive, and occasionally intimidating; these are not statements of fact but rather her personal observations. The letter itself makes it clear that Powers was conveying her subjective impressions; it states at the outset that it expresses "my strong opinions on this matter." In discussing Powers's feelings of intimidation stemming from apprehension that Lester might retaliate against her for disclosing her views, the letter states: "I hasten to say that this is only my impression, totally unsubstantiated in fact—but that it is my perception." Finally, the context in which the letter was written indicates that the kinds of statements solicited in the tenure review process are evaluations—i.e., statements of opinion as to the tenure candidate's merit. We are persuaded that the letter was an expression of opinion.

## VI.

■ A statement of opinion may be actionable, however, if it implies the existence of undisclosed defamatory facts. *See True*, 513 A.2d at 261–62. Assuming that a jury could reasonably understand the letter to imply undisclosed defamatory facts, we must decide whether the record before us could support a finding that Powers knew any such factual implications to be false, or recklessly disregarded their truth or falsity. *See Onat*, 574 A.2d at 874–75; *Gautschi*, 565 A.2d at 1011.

Knowledge or disregard of falsity is a purely subjective state of mind. *See True*, 513 A.2d at 260, 265; *Michaud*, 381 A.2d at 1114. *Accord, St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968); *Restatement* § 600. Although Lester contends numerous statements in Powers's letter are false, "[t]here must be sufficient evidence to permit the conclusion that the defendant *in fact entertained serious doubts as to the truth of his publication.*" *Michaud*, 381 A.2d at 1114 (quoting *St. Amant v. Thompson*, 390 U.S. at 731, 88 S.Ct. at 1325) (emphasis added in *Michaud*). Evidence that some of Powers's factual premises were objectively false, or even that no reasonable person could have believed them to be true, does not show that she knew or disregarded their falsity.

Lester contends a jury could infer that Powers knew the statements in her letter were false, however, because after she

---

**9.** The *Caron* standard comports with the decisions of other jurisdictions. *E.g., Milkovich v. Lorain Journal Co.*, —— U.S. ——, ——, 110 S.Ct. 2695, 2705–2707, 111 L.Ed.2d 1 (1990) (under First Amendment, statements are protected as opinion unless "provably false" and capable of being reasonably interpreted as making or implying false and defamatory statements concerning actual facts); *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 566 N.Y.S.2d 906, 916–17, 567 N.E.2d 1270, (1991), *cert. denied* —— U.S. ——, 111 S.Ct. 2261, 114 L.Ed.2d 713 (1991) (analysis under New York state constitutional law looks to content, tone, and apparent purpose of whole communication to determine whether statement is protected as opinion). *Cf. Ollman v. Evans*, 750 F.2d 970, 978–84 (D.C.Cir. 1984) (*en banc*) ("totality of circumstances" test for opinion includes common meaning of statement, verifiability, immediate context within speaker's entire communication, and broader social context). Although its specific holding has been overruled by *Milkovich* as a statement of First Amendment law, *Ollman* contains a learned and extensive discussion of the fact-opinion dichotomy.

learned that Lester had been denied tenure, she destroyed or discarded her notes from his abnormal psychology class, including whatever notes she took during the class discussion of homosexuality. Although Powers explained this action as her way of turning the page psychologically on "unfinished business," Lester argues a jury might fairly infer that she destroyed the notes because they did not support the version of the class portrayed in her letter, and therefore that she was consciously untruthful. He also suggests a jury could rationally draw the same inference from the fact that Powers submitted the letter after the deadline.

We disagree. In *Gautschi*, we upheld a summary judgment against an argument for a similarly speculative inference. The plaintiff alleged that the defendant had falsely reported to the tenure review committee a negative comment by a professor who had reviewed the plaintiff's work; the plaintiff's only basis for the allegation, however, was that he himself had been told something more complimentary. Finding the evidence insufficient to permit a conclusion that the defendant had lied, we affirmed the grant of summary judgment. *See Gautschi*, 565 A.2d at 1011.

In *True v. Ladner*, we upheld a jury verdict that a statement of opinion implied undisclosed defamatory assertions of fact. 513 A.2d at 262. But in that case, the evidence sufficiently demonstrated reckless disregard of falsity based not only on the defendant's failure to review the plaintiff's evaluations, which did not support his defamatory comments, but also on his own prior written laudatory comments to the plaintiff. *See id.* at 259–60, 265. Our decision in *True* in no way compels us to conclude that the evidence Lester has produced would be sufficient to support a jury verdict based on knowledge or reckless disregard of falsity.

Even though Lester is entitled to "the full benefit of all favorable inferences that may be drawn from [the] evidence," *Spickler*, 586 A.2d at 1233, he is not entitled to the benefit of unsupported speculation. The trial court properly concluded that Lester failed to generate a factual issue as to whether Powers abused the conditional privilege afforded her letter, and accordingly Powers was entitled to a summary judgment as a matter of law.

The entry is:

Judgment affirmed.