STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-12-24
*NM-cum-1/9/2014*

DANIEL PARKS,

      Plaintiff

v.

                                JUDGMENT

ANDREW FRANCOEUR,

      Defendant

Jury-waived trial was held on the plaintiff's complaint for defamation. The plaintiff seeks damages for emotional and physical injuries. He offered no proof of special harm.

The court has considered the testimony of the witnesses who testified at trial[1] and the deposition testimony. (Pl.'s Exs. 1 & 2.) For the following reasons, judgment is entered in favor of the defendant and against the plaintiff on the plaintiff's complaint.

Findings of Fact

The plaintiff is 68 years old. He worked at S.D. Warren for 38 years, beginning in 1966 and retired in 2004. He was active in the union and served as Shop Steward and later as Chief Shop Steward.

He has been married to Judith Parks for 51 years. They married in July 1962 and raised their three children together. He described his wife as the person who "is, was, and always will be the one and only love of his life." He has always been faithful to Judith and never indicated, implied, or suggested that

---

[1] The court heard de bene the testimony of Paula Caldwell and Richard Caldwell about the plaintiff's accusation that Ms. Caldwell stated in the fall 2010 that the plaintiff had had an affair. The court has not considered that testimony in making this decision.

1

he had been unfaithful. He is an active member of his church; he understands that marriage is a holy sacrament and means that one person commits himself to another for life. Adultery or coveting another person's wife or goods is not allowed.

The plaintiff met the defendant on March 7, 1966. The plaintiff's brother-in-law, who is the defendant's first cousin, introduced the plaintiff and the defendant. The plaintiff always considered the defendant a friend. They served as union officers together and got along well. The plaintiff always trusted the defendant and had no union or personal problems with him.

William Carver served as Union President in the mid-1970s and was a personal friend of the plaintiff's. When Mr. Carver died, the plaintiff attended the wake on June 5, 2010. The plaintiff spoke with Mr. Carver's wife, siblings, and children. Later, the plaintiff spoke with people he knew and sat in a row of chairs with Norman Fickett and the defendant. The defendant sat between the plaintiff and Mr. Fickett. The plaintiff then moved two or three seats to speak to others, including Messrs. Rondo, Fickett, and Lessards. After Mr. Rondo left to go to work, the plaintiff conversed with Messrs. Fickett and Lessards.

The plaintiff alleges at that time, he heard the defendant state, "he had an affair with Nancy York." The plaintiff testified that he knew the voice and that the defendant sat there, with his mouth puckered, looking straight ahead. The plaintiff testified that it was like the defendant "knew this about me and thought everyone should hear." The plaintiff assumed and understood the comment was about him. The comment was made loudly enough for Mr. Fickett and the plaintiff to hear. The plaintiff did not know who else heard the comment. The plaintiff testified that when the comment was made, Mr. Fickett raised his hand

2

as if to say, "I do not want to hear that; I do not want to be part of that." The plaintiff testified that he spoke to Mr. Fickett about the comment. The plaintiff does not know whether the comment was repeated to anyone else at other times.

The plaintiff testified that after the comment, his heart was beating and he waited for the beating to diminish. He testified he did not know what to do. He did not confront the defendant at the time because they were in a funeral parlor.

Nancy York worked at the mill beginning in 1976 and was on the plaintiff's crew for six or seven years. He represented her in union matters, as he did all hourly workers. She left the mill in 1988 based on medical disability for multiple sclerosis. The plaintiff considered her a friend and visited her a number of times at the nursing homes where she resided and called to learn how she was doing. She died in September 1996. The plaintiff attended her wake.

The plaintiff testified the comment about Nancy York was not true. He stated he "never, ever" had sexual relations with her and he gave no permission to the defendant to make the comment.

As a result of the comment the plaintiff attributed to the defendant, the plaintiff testified that he suffered mental and physical issues. He lost motivation, concentration, and the ability to sleep as he did previously. He smokes more than previously and has lost weight. His interaction with his wife has been affected. They do not go on vacations and do not go out.

The plaintiff was unable to put the matter behind him; he determined there must be a reason why the comment was made and he continued to be affected. Finally, in April 2012, he decided to consult his doctor, John Meserve, M.D., who referred the plaintiff for a neurologic exam. (Pl.'s Ex. 1.) The doctors determined the plaintiff's tremor was not a neurological issue but the result of

3

stress and anxiety caused by the defamatory statement. (Pl.'s Ex. 1 at 13, 16, 25, 28-30.) Medicine resolved the tremor but the stress was not resolved. (PL.'s Ex. 1 at 16-17.) The plaintiff was not interested in continuing any medication. (PL.'s Ex 1 at 20-22, 36-39.) According to Dr. Meserve, the stress will continue if the plaintiff continues to give prominence to the comment in his life. (Pl.'s Ex. 1 at 21-22.)

The plaintiff stated that the comment has changed his entire life. Because he thinks about the comment so much, he is drained. Activities and interests he previously enjoyed no longer matter. When he sees anyone, he wonders whether that person has heard the comment and whether the person will ask him if he had an affair with Nancy York or anyone else. Although the plaintiff testified that he has questions and the one person who can answer them won't since day one, the plaintiff never spoke to, or confronted, the defendant at any time after June 5, 2010, in writing or otherwise.

Norman Fickett, whose testimony was presented through a deposition transcript, testified that he was at Mr. Carver's wake in the vicinity of the plaintiff, the defendant, and Mr. Lessards. Mr. Fickett recalled the defendant stated, "out of the blue," "Danny had an affair with Nancy York." (Pl.'s Ex. 2 at 7-8, 14, 18.) According to Mr. Fickett, no one said anything after the comment was made. (Pl.'s Ex. 2 at 14-15, 17-18, 20, 23.) Mr. Fickett testified he did not discuss the comment with the plaintiff. (Pl.'s Ex. 2 at 14.)

The defendant agreed he attended the Carver wake and recalled he was seated with Messrs. Bois, Morris, and Farren but not with Mr. Fickett. The defendant had no conversation with the plaintiff or Mr. Fickett at the wake. The defendant denied making any comment about the plaintiff, or anyone, having an

4

affair with Nancy York. Mr. Bois did not hear the defendant state that the plaintiff had an affair with Nancy York. The defendant had no communication with the plaintiff after the wake until he received a letter from the plaintiff's attorney in September or October 2011.

Conclusions of Law

In order to prevail on his claim for defamation, the plaintiff must prove:

1) a false and defamatory statement concerning another;
2) an unprivileged communication to a third party;
3) fault amounting to at least negligence on the part of the publisher;
4) either actionability of the statement irrespective of special harm[2] or the existence of special harm caused by the publication.

---

[2]Slander per se, as defined in the Restatement, includes "one who publishes a slander that imputes serious sexual misconduct to another . . . ." Restatement (Second) of Torts § 574 (1977). Unfaithfulness to a spouse constitutes serious sexual misconduct. Id. cmt. b. No proof of special harm is required. Id.

The Law Court discussed slander per se most recently in Cookson v. Brewer School Department:

Slander per se refers to spoken defamatory statements that "relate to a profession, occupation or official station in which the plaintiff was employed. Malice is implied as a matter of law in such cases, and the claimant may recover compensatory damages without proving special damages." Saunders v. VanPelt, 497 A.2d 1121, 1124–25 (Me. 1985). To prove defamation, a plaintiff must establish that a false statement published to a third party harmed the plaintiff's reputation so as to lower her in the community's estimation. Ballard v. Wagner, 2005 ME 86, ¶ 10, 877 A.2d 1083, 1087.

Cookson v. Brewer Sch. Dep't., 2009 ME 57, ¶ 27, 974 A.2d 276. Although the Cookson case concerned statements relating to the plaintiff's profession, the defendant argues that the court's characterization of slander per se in Cookson shows the Law Court does not recognize other forms of slander per se.

Although it does not appear that the Law Court has ever definitively held that allegations of sexual misconduct constitute slander per se in Maine, the Law Court has adopted the Restatement definition of defamation. Lester v. Powers, 596 A.2d 65, 69 (Me. 1991). In two decisions, the Superior Court concluded the Law Court would also adopt the Restatement's categories of slander per se. Malenko v. Campbell, 2010 WL 3830835 (Me. Super. Aug. 4, 2010) (Cumberland County, Cole, J.) ("Mr. Malenko alleges that Ms. Campbell knowingly made a false statement to DHHS accusing him of criminal conduct and gross sexual impropriety. These accusations constitute slander per se and are actionable irrespective of any special harm. Restatement (Second) of Torts §§ 571, 574 (1977)."); Pylypenko v. Bennett, 2011 WL 1338088 (Me. Super. Feb. 23, 2011) (citing Restatement (Second) of Torts §§ 571, 574 (1977)) (statements concerning sexual and criminal misconduct were "actionable per se.")

Rippett v. Bemis, 672 A.2d 82, 86 (Me. 1996) (citing Lester v. Powers, 596 A.2d 65, 69 (Me. 1991)). The plaintiff has failed to prove the defendant made a false and defamatory statement concerning the plaintiff. Several aspects of the plaintiff's proof cause the court to question the credibility of the testimony of the plaintiff and Mr. Fickett. First, the difference between the plaintiff and Mr. Fickett's recollection of the defendant's alleged statement is important. The plaintiff testified that the defendant stated, "he had an affair with Nancy York." Although other men were in the area and the defendant was looking "straight ahead," the plaintiff "assumed" the defendant was speaking about the plaintiff. Mr. Fickett recalled the defendant stated, "Danny had an affair with Nancy York." If the defendant had specified the plaintiff, it seems the plaintiff would have remembered that. If the plaintiff's version of the statement is believed, his bare assumption that the statement was about him is insufficient to prove the statement concerned the plaintiff. Further, although the plaintiff testified he

---

Whether Maine follows the Restatement's slander per se rule on sexual misconduct remains an open question. Historically, the Restatement's sexual misconduct rule applied only to women. See Restatement (Second) of Torts § 574, cmt. c ("The rule stated in this Section has traditionally not applied to the imputation of unchastity in a man, unless the occasion falls within the rules stated in §§ 571 or 573."); see also, Jelly v. Dabney, 581 P.2d 622, 625 (Wyo. 1978) (noting that the slander per se rule "does not apply to men 'unless it refers to the man having committed a criminal offense'").

Recently, courts have adopted the plain language of the Restatement rule. See Doe I v. Individuals, 561 F. Supp. 2d 249, 256 (D. Conn. 2008) ("[A]ny statement that imputes 'serious sexual misconduct' to a person subjects the publisher to liability, without any need to prove special harms . . . ."); see also Baufield v. Safelite Glass Corp., 831 F. Supp. 713, 717 (D. Minn. 1993) ("A statement is defamatory per se if it imputes serious sexual misconduct to the subject of the statement."); see also Rejent v. Liberation Publ'ns, Inc., 197 A.D.2d 240, 245 (N.Y. App. Div. 1994) (criticizing the selective application of the rule to women and adopting the Restatement's rule).

The court assumes, for the purposes of this case, that the Law Court would adopt the Restatement's slander per se rule with regard to serious sexual misconduct.

discussed the comment with Mr. Fickett, he denied discussing the comment with the plaintiff.

Second, even though the plaintiff alleged the statement changed his whole life, he took no action whatsoever after the alleged statement was made. He did not confront or challenge the defendant at the time of the alleged statement or subsequently. Instead, the plaintiff's attorney sent a letter to the defendant in September or October 2011. The complaint was filed in January 2012. The plaintiff consulted his doctor in April 2012.

Finally, the plaintiff's testimony about the events of June 5, 2010 and thereafter was not credible, was exaggerated, and was, at times, theatrical. With regard to Mr. Fickett's testimony, based on the discrepancies between his testimony and that of the plaintiff and because it is difficult to assess credibility based on this written deposition transcript, his testimony is given little weight.

The entry is

Judgment is entered in favor of the Defendant and against the Plaintiff on the Plaintiff's Complaint

Date: January 9, 2014

Nancy Mills
Justice, Superior Court

7

OF COURTS
erland County
y Street, Ground Floor
id, ME 04101



JOSEPH CAHOON ESQ
RICHARDSON WHITMAN LARGE & BADGER
PO BOX 9545
PORTLAND ME 04112-9545

OF COURTS
rland County
y Street, Ground Floor
id, ME 04101

ANDREW BROADDUS ESQ
PO BOX 368
WESTBROOK ME 04092