MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 179
Docket:      Cum-19-39
Argued:      November 5, 2019
Decided:     December 30, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

KATHLEEN WAUGH

v.

GENESIS HEALTHCARE LLC et al.

GORMAN, J.

[¶1]  Kathleen Waugh appeals from a summary judgment entered in the Superior Court (Cumberland County, *Horton, J.*) in favor of Genesis Healthcare LLC and Westbrook Operations, LLC, d/b/a Springbrook Center (Springbrook) on Waugh's complaint for defamation and "slander/libel per se."  Waugh contends that the court erred by concluding that the statements at issue are subject to a conditional privilege.  We affirm the judgment.

## I.  BACKGROUND

[¶2]   In 2017, Kathleen Waugh filed a complaint against Genesis Healthcare and Springbrook (collectively, Genesis) in the Superior Court alleging defamation and slander or libel per se, for which she sought

2

compensatory and punitive damages.[1] Waugh alleged that Genesis terminated her contract as a registered nurse at Springbrook based on false allegations of patient abuse.[2]

[¶3] Genesis moved for a summary judgment, and Waugh opposed the motion. Viewing the supported statements of material facts in the light most favorable to Waugh, as the nonprevailing party, the summary judgment record establishes the following. *See Oceanic Inn, Inc. v. Sloan's Cove*, *LLC*, 2016 ME 34, ¶ 25, 133 A.3d 1021.

[¶4] Springbrook provides care services to incapacitated and dependent adults.[3] Waugh is a registered nurse who worked for a staffing agency, Core Medical Group, from April of 2015 through August of 2016. In January of 2016, Core placed Waugh to work as a nurse at Springbrook. On July 30, 2016, a

---

[1] Waugh also asserted a claim for interference with advantageous economic relations. Waugh does not challenge the court's (*L. Walker, J.*) dismissal of that count pursuant to M.R. Civ. P. 12(b)(6) for failure to state a claim.

[2] Waugh alleged in her complaint that she was terminated by Springbrook in retaliation for her reports to management that understaffing had created unsafe conditions for residents and staff at the facility and that Genesis's "actions amount[ed] to reckless disregard for [Waugh's] rights under the [Whistleblowers' Protection Act (WPA), 26 M.R.S. §§ 831-840 (2018),] and the [Maine Human Rights Act, 5 M.R.S. §§ 4551-4634 (2018)]," but she did not allege a violation of either statute as a cause of action in her complaint.

[3] The summary judgment record does not disclose whether or on what basis Genesis Healthcare LLC is a proper defendant in this matter. The only suggestion of Genesis Healthcare's relationship to Waugh or Springbrook was in Waugh's statements of material facts, which were properly denied. Genesis Healthcare has not moved to dismiss the complaint on that ground, however, and it otherwise appears to have aligned its interest with that of Springbrook.

Springbrook resident reported to another nurse that, on the previous evening, Waugh had "ripped the call bell off [his] shirt" and placed it out of his reach, stated "how do you like that?" to him, and told him that he would instead be checked on at regular intervals. The resident explained that Waugh had accused him of calling for assistance too often. In response to that report, Springbrook began an investigation that included speaking to the resident and to Springbrook employees who had been on duty on the evening of July 29. The investigation showed that the resident repeated his accusation about Waugh to other staff members. Springbrook employees, including certified nursing assistants (CNAs), provided witness reports about the evening of the incident and the resident's allegations. Springbrook also asked Waugh about the resident's claim, and she denied having removed the resident's call bell.

[¶5] While it was conducting its investigation, Springbrook—through its director of nursing—sent Core a form document entitled "Travel Employee Performance Counsel Notice." In that notice, the director of nursing described the incident at issue by writing, "[The resident] alleges neglect and informed DHHS." In response to a question posed on the form, "Were there witnesses to the above incident?" Springbrook's director of nursing checked the box

4

indicating "Yes" and stated, "Staff provided statements along with [the] resident."

[¶6]    From its investigation, Springbrook concluded that Waugh's conduct violated the call bell policy, did not provide an acceptable level of care to the resident, and was inconsistent with Springbrook's mission to provide quality care and protect residents from potential or actual abuse or neglect.  On August 3, 2016, Springbrook's human resources manager emailed Genesis Healthcare's regional human resources manager to request approval to terminate Waugh's contract.  In that email, Springbrook's human resources manager wrote, "[Waugh] denies taking the call bell away, but this is not supported by the CNA and resident interviews."  Based on its determination that Waugh had violated its policy, Springbrook terminated Waugh's assignment to its facility.  Core then declined to give Waugh any additional assignments.

[¶7]    By judgment dated December 18, 2018, the court granted a summary judgment in favor of Genesis as to both counts.  Waugh appeals.

## II.  DISCUSSION

[¶8]    Waugh contends that the court erred by granting a summary judgment in favor of Genesis on her claims of defamation and slander or libel

per se as to two statements:[4] (1) Springbrook's human resources manager's August 3, 2016, email, in which the manager stated that "[Waugh] denies taking the call bell away, but this is not supported by the CNA and resident interviews" and (2) the notice sent to Core in which Springbrook's director of nursing stated, "[The resident] alleges neglect and informed DHHS" and answered the question, "Were there witnesses to the above incident?" by checking the box marked "Yes" and stating, "Staff provided statements along with [the] resident."

[¶9] We review de novo the grant of a summary judgment by considering all of the undisputed facts and reasonable inferences from the statements of material facts in the light most favorable to Waugh, as the nonprevailing party. *See Drilling & Blasting Rock Specialists, Inc. v. Rheaume*, 2016 ME 131, ¶¶ 14, 29, 147 A.3d 824; *Oceanic Inn, Inc.*, 2016 ME 34, ¶ 25, 133 A.3d 1021. As the defendant moving for a summary judgment, it was Genesis's initial burden to establish that there was no genuine dispute of material fact and that the undisputed facts entitled it to a judgment as a matter of law. *See Oceanic Inn, Inc.*, 2016 ME 34, ¶ 26, 133 A.3d 1021. It was then Waugh's burden to make out

---

[4] We do not consider Waugh's assertion that Core also published defamatory statements because Core is not a defendant in this matter. We also do not consider the other statements that Waugh identified as defamatory before the trial court that she does not press on appeal.

6

a prima facie case for each claim and demonstrate that a genuine dispute of material fact exists as to each. *See id.*

[¶10] Defamation requires proof, by a preponderance of the evidence, of

(1) a false and defamatory statement concerning another;

(2) an unprivileged publication to a third party;

(3) fault amounting at least to negligence on the part of the publisher; [and]

(4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Rippett v. Bemis*, 672 A.2d 82, 86 (Me. 1996) (quotation marks omitted); *see Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991); *see also Staples v. Bangor Hydro-Elec. Co.*, 629 A.2d 601, 604 (Me. 1993); Restatement (Second) of Torts § 558 (Am. Law Inst. 1977).

[¶11] "Special harm" in the context of defamation means economic or pecuniary harm. *Withers v. Hackett*, 1998 ME 164, ¶ 9, 714 A.2d 798; Restatement (Second) of Torts § 575 cmt. b (Am. Law Inst. 1977). A defamatory communication may be actionable without special harm if the defamatory communication would adversely affect the plaintiff in her business or profession, either through spoken words (slander per se) or in written form

(libel per se). *See Cookson v. Brewer Sch. Dep't*, 2009 ME 57, ¶ 27, 974 A.2d 276; *Ballard v. Wagner*, 2005 ME 86, ¶ 10, 877 A.2d 1083.

[¶12] We agree with the Superior Court that Waugh failed to establish in the summary judgment record at least one of these elements for each cause of action. More particularly, even assuming that Waugh met her prima facie burden as to the falsity of the statements at issue, negligence in the publication of the statements, and special harm suffered as a result of the publication or actionability regardless of special harm (the first, third, and fourth elements of defamation), we conclude that Waugh did not meet her burden to establish, on a prima facie basis, that the statements were unprivileged publications to a third party (the second element of defamation). *See Rippett*, 672 A.2d at 86; *see also Plante v. Long*, 2017 ME 189, ¶ 9, 170 A.3d 243.

[¶13] The unprivileged publication element requires a plaintiff to establish that the defendant's statement to a third person is not subject to a conditional privilege. *Rippett*, 672 A.2d at 86-87. "A conditional privilege against liability for defamation arises in settings where society has an interest in promoting free, but not absolutely unfettered, speech." *Lester*, 596 A.2d at 69. Genesis enjoys a conditional privilege concerning the statements of the human resources manager and the director of nursing as "[s]tatements made

in the course of an investigation into an employee's actions for disciplinary purposes." *Morgan v. Kooistra*, 2008 ME 26, ¶ 35, 941 A.2d 447.

[¶14] When a conditional privilege does exist, the defendant loses the privilege—and subjects itself to liability for defamation—only if it abuses the privilege by making the statement when it either knows the statement to be false or acts in reckless disregard of its truth or falsity (also known as "actual malice") or when it "act[s] entirely out of ill will toward [the plaintiff]." *Staples*, 629 A.2d at 604.

[¶15] Waugh argues that because Genesis admits that no CNA verified that Waugh had, in fact, taken the resident's call bell—i.e., because Genesis admits the falsity of any statement that the call bell incident was verified by a CNA—that necessarily means that Genesis acted with knowledge of or in reckless disregard of the falsity of the allegations or with ill will in reporting that the resident's account was verified.[5] She also contends that ill will can be

---

[5] Waugh asserts that the statement made by Springbrook's human resources manager—"[Waugh] denies taking the call bell away, but this is not supported by the CNA and resident interviews"—is a false statement because it was intended to suggest that the resident's complaint of the call bell incident had been verified by a CNA. For purposes of this opinion, we accept that assertion, although an equally credible reading of the statement is that Waugh's *denial* of the occurrence could not be verified by any of the CNAs. Other than the resident and Waugh, no one was present in the resident's room at the time of the challenged events, and no witness other than Waugh and the resident claimed to have heard their conversation.

inferred from the evidence regarding her prior complaints that Springbrook was understaffed and unsafe. We disagree.

[¶16] The only evidence in the summary judgment record of Genesis acknowledging that no CNA had verified the resident's version of the call bell incident came from deposition testimony given in the course of this litigation. The fact that Genesis, more than two years after the call bell incident and the statements at issue were made, agreed that no CNA confirmed that Waugh took away the call bell may be relevant to the falsity of the facts pursuant to the first element of defamation, but, by itself, it has no bearing on whether the human resources manager or director of nursing entertained any doubts about the truthfulness of the statements *at the time the statements were made*. *See Plante*, 2017 ME 189, ¶ 12, 170 A.3d 243 (distinguishing the falsity element in a libel claim from the element of malice).

[¶17] Further, although Waugh included in her summary judgment filings more than fifty statements of fact regarding her complaints about the conditions at Springbrook that she asserted were "material" to the case, she offered no evidence to link those reports to her defamation or slander or libel per se claims beyond mere speculation.[6] *See Lester*, 596 A.2d at 72 ("Even

---

[6] Waugh's reliance on *Cormier v. Genesis Healthcare LLC*, is also unfounded. 2015 ME 161, 129 A.3d 944. In *Cormier*, we determined that the reasonable inferences that could be drawn from a

though [the plaintiff] is entitled to the full benefit of all favorable inferences that may be drawn from the evidence, [she] is not entitled to the benefit of unsupported speculation." (alteration omitted) (citation omitted) (quotation marks omitted)).

[¶18]  As a matter of law, Waugh has produced no evidence from which a fact-finder could infer that either of the Springbrook representatives, when they made the statements alleging improper patient care, knew that their statements were untrue, acted in reckless disregard of their truth or falsity, or acted solely out of ill will toward Waugh.[7]  *See Staples*, 629 A.2d at 604; *Lester*, 596 A.2d at 69 & n.7.  In the absence of such prima facie evidence that Genesis abused the conditional privilege that otherwise protects the statements, Genesis was entitled to a summary judgment in its favor as to Waugh's defamation claim.  In addition, because Waugh's claims for slander or libel per

---

CNA's complaints about staffing levels, made shortly before she was suspended and later discharged from her employment in a nursing home, were sufficient to generate an issue of fact as to whether the employer violated the WPA.  *Id.* ¶¶ 17-23.  Waugh asserts that *Cormier* thereby allows for "an inference of retaliation."  Retaliation was an element of the WPA claim in *Cormier*, but Waugh did not assert a WPA claim, and retaliation is not an element of defamation.  *Id.* ¶ 8; *Rippett v. Bemis*, 672 A.2d 82, 86 (Me. 1996); *see supra* n.2.

[7] What Waugh truly appears to challenge is Genesis's evaluation of the information it gathered in its investigation of the call bell incident and its decision to discharge Waugh on that basis—i.e., that Genesis believed the resident's version of events and not Waugh's—rather than the substance of the statements that Genesis made *about* its decision to discharge Waugh.  Whether Genesis may have misjudged the credibility of those involved in the incident is not relevant to Waugh's defamation claims.

se also depend on proof of the same element, Genesis was entitled to a summary judgment in its favor as to those causes of action as well. *See Cookson*, 2009 ME 57, ¶ 27, 974 A.2d 276; *Ballard*, 2005 ME 86, ¶ 10, 877 A.2d 1083.

The entry is:

Judgment affirmed.

---

Guy D. Loranger, Esq. (orally), Law Office of Guy D. Loranger, P.A., Old Orchard Beach, for appellant Kathleen Waugh

James R. Erwin, Esq. (orally), and Elizabeth B. Rao, Esq., Pierce Atwood LLP, Portland, for appellees Genesis Healthcare LLC and Westbrook Operations, LLC

Cumberland County Superior Court docket number CV-2017-339
FOR CLERK REFERENCE ONLY