STATE OF MAINE                                      SUPERIOR COURT
ANDROSCOGGIN, ss.                                   CIVIL ACTION
                                                    DOCKET NO. CV-22-72


BARRY VAILL and ELAINE VAILL,

         Plaintiffs

         v.                                         ORDER ON STEVE RICKERT'S
                                                    MOTION TO DISMISS
ANGLICAN CHURCH OF THE
TRANSFIGURATION, GARY
DRINKWATER, and STEVE RICKERT

         Defendant

The matter before the court is defendant Steve Rickert's motion to dismiss the libel claim

filed against him by plaintiff Barry Vaill. For the following reasons, the motion shall be denied.

Factual Background

The following facts are taken from allegations in the Complaint, which for the purposes

of a motion under M.R. Civ. P. 12(b)(6) must be treated as true.

Plaintiffs Barry and Elaine Vaill decided to open an Anglican church in Androscoggin

County in the summer of 2016. (Compl. ¶ 7.) At the time, the only Maine churches belonging to

the Anglican Diocese of the Northeast, to which the Vaill's belonged, were located in Portland,

Maine and Scarborough, Maine. (*Id.*) Mr. Vaill reached out to defendant Gary Drinkwater, who

was a Deacon in the Episcopal Diocese of Maine at the time but was not assigned to any church,

to offer him a position as pastor at the church in Androscoggin County the Vaill's intended to

create. (Compl. ¶ 8.) Mr. Drinkwater agreed. (Compl. ¶ 8.)

Mr. Vaill secured a location for the new church in the town of Mechanic Falls. (Compl. ¶

9.) Mr. Vaill used personal funds and secured financing to conduct necessary repairs at the

1

location. (Compl. ¶ 10.) Once the location was in good condition, the church opened under the name "the Anglican Church of the Transfiguration" (the "Church"). (*Id.*)

Mr. Vaill served as President and Treasurer for the Church when it was formed, a position called the "Senior Warden." (Compl. ¶ 11.) The Church also had a Board of Directors, referred to as the Vestry, several clergy, church officers, and committees. (Compl. ¶ 13.) As Senior Warden, Mr. Vaill was responsible for managing the financial affairs of the Church and briefing the Vestry and clergy on such matters. (*Id.*) Mrs. Vaill served on several committees in the Church, prepared music for Sunday mass, decorated the Church for holidays, and engaged in many other tasks. (Compl. ¶ 12.)

In June of 2020, Kim Williams began volunteering regularly at the Church. (Compl. ¶ 16.) Ms. Williams was a neighbor of Mr. Drinkwater. (*Id.*) As Ms. Williams was unable to drive, Mr. Drinkwater often drove her to and from the Church roughly three days per week, so she could volunteer. (*Id.*) Mr. Drinkwater drove Ms. Williams to the Church between June 2020 and January 2021. (*Id.*) Throughout this time, Ms. Williams made several complaints about Mr. Drinkwater's behavior, alleging that he made crude jokes and was acted controlling towards her. (Compl. ¶¶ 18-19, 27.) Ms. Williams and Mrs. Vaill often volunteered together, which developed into a friendship. (Compl. ¶ 17.)

In January of 2021, plaintiffs allege that Mr. Drinkwater told Ms. Williams that he had met with members of the Vestry to encourage them to vote Mr. Vaill out of his position as Senior Warden. (Compl. ¶ 21.) Plaintiffs allege that Mr. Drinkwater made the following statements to Vestry members to tarnish the reputation of Mr. Vaill and the Vaills generally:

1.) Mr. Vaill is a dictator;

2.) Mr. Vaill would not pay Mr. Drinkwater 401k funds;

2

3.) the Vaills had been kicked out of other churches;

4.) Mr. Vaill spends money frivolously; and

5.) Mr. Vaill refused to pay Mr. Drinkwater

(Compl. ¶ 21.) The Vaills allege that all of these statements are false and were made with knowledge of their falsity. (Compl. ¶ 22.) Additionally, the Vaills allege that Mr. Drinkwater told Ms. Williams that he intended to remove Mr. Vaill as Senior Warden, and that Mr. Vaill had tried to remove him as Rector.

The Vaills also allege that Mr. Drinkwater made several defamatory statements about Mrs. Vaill in January 2020. The Vaills allege that Mr. Drinkwater told Ms. Williams to "be careful around [Mrs. Vaill], once she gets her claws into you . . . and if you ever disagree with her or don't do what she wants, she can become nasty."[1] (Compl. ¶ 24.) The Vaills also allege that Mr. Drinkwater told Ms. Williams that Mrs. Vaill's sister refused to talk to her, and that she is "crazy and mentally disturbed." (*Id.*) Finally, Mr. Drinkwater allegedly told Ms. Williams that Mrs. Vaill has had a shrine of her dead son for over 30 years and that she should "get over it." (Compl. ¶ 25.) The Vaills allege that all of these statements are false and were made with knowledge of their falsity. (Compl. ¶ 26.)

In February 2021, Mr. Vaill made a complaint regarding Mr. Drinkwater's behavior towards Ms. Williams to the Bishop of the Anglican Diocese of the Northeast, Brian Marsh. (Compl. ¶ 28.) Mr. Vaill discussed terminating Mr. Drinkwater as Rector of the Church with other members of the Clergy, including the Bishop and the Church's attorney. (Compl. ¶ 29.) Mr. Vaill then emailed a letter to the Vestry informing them that Mr. Drinkwater had been

---

[1] The ellipsis contained within this quote appears in the Vaill's Complaint. The Complaint does not cite a source for this quotation, so it is not clear what was omitted. However, the court need not, and indeed may not, engage in any fact finding at this early stage of proceedings, so the source of the quotation is not an important fact. The court will consider the quotation as an alleged statement made by Mr. Drinkwater.

3

terminated from his position as Rector. (Compl. ¶ 30.) The Vaills do not allege who made the decision to terminate Mr. Drinkwater.

Many Vestry members were unhappy with this news. One such member, defendant Steve Rickert, emailed Bishop Marsh to protest the decision. The Vaills allege that the email contains the following statements:

> There remains the problem of the Senior Warden. As I reported to you, the behavior that I experience from Barry Vaill was unchristian and inexcusable. I have since learned that it has occurred with nearly every member of the parish. It is an outrage that this has been known and allowed to continue in the church. Others may be content to tolerate a bully in their midst but I am not.
>
> As of yesterday evening, the innuendo continues of something terrible having happened that is about to be revealed that cause Father Gary to be terminated for the safety of the parish. I have yet to hear what the terrible thing is.

(Compl. ¶ 31.) Mr. Vaill alleges that these statements are false and malicious, and ultimately resulted in Mr. Vaill being ousted from his position as Senior Warden. (Compl. ¶ 32.) Mr. Vaill resigned from his position on March 31, 2021. (Compl. ¶ 33.)

Standard

When ruling on a motion to dismiss for failure to state a claim pursuant to M.R. Civ. P. 12(b)(6), the court views the "facts alleged in the complaint as if they were admitted." *Nadeau v. Frydrych*, 2014 ME 154, ¶ 5, 108 A.3d 1254 (*per curiam*) (quotation marks omitted). A complaint must set forth the "elements of a cause of action or allege[] facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id*. Facts are read in the light most favorable to the plaintiff. *Id*. "Dismissal is warranted only when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that might be proved in support of the claim." *Halco v. Davey*, 2007 ME 48, ¶ 6, 919 A.2d 626 (quotation marks omitted).

4

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." M.R. Civ. P. 8(a). "Notice pleading requirements are forgiving; the plaintiff need only give fair notice of the cause of action by providing a short and plain statement of the claim showing that the pleader is entitled to relief." *Desjardins v. Reynolds*, 2017 ME 99, ¶ 17, 162 A.3d 228 (quotation marks omitted). On the other hand, "a party may not proceed[] on a cause of action if that party's complaint has failed to allege facts that, if proved, would satisfy the elements of the cause of action." *Burns v. Architectural Doors and Windows*, 2011 ME 61, ¶ 17, 19 A.3d 823.

Discussion

Mr. Rickert argues that the claims against him must be dismissed for four reasons. First, Mr. Rickert argues that Mr. Vaill is a limited public figure and the Complaint does not allege facts which could support the element of actual malice necessary for a defamation claim against such a figure. Second, Mr. Rickert argues that the Complaint does not plead any actionable damages. Third, Mr. Rickert argues that the email in which he made the allegedly defamatory statements is conditionally privileged. Finally, Mr. Rickert argues that the email contains only statements of opinion.

"Defamation requires proof, by a preponderance of the evidence, of (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; [and] (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Waugh v. Genesis Healthcare LLC*, 2019 ME 179, ¶ 10, 222 A.3d 1063 (quoting *Rippett v. Bemis*, 672 A.2d 82, 86 (Me. 1996)). Public figures bringing defamation claims must also prove that the defamatory statements were made with "actual malice," which means that the

"statements were made with knowledge of their falsity or with reckless disregard as to whether they were true or false." *See Beal v. Bangor Publishing Co.*, 1998 ME 176, ¶ 6, 714 A.2d 805 (Me. 1998) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964)).

"Special harm" in the context of defamation generally means economic or pecuniary harm. *Withers v. Hackett*, 1998 ME 164, ¶ 9, 714 A.2d 798. A defamatory communication may be actionable without special harm if the communication would adversely impact the plaintiff in their business or profession. *See Ballard v. Wagner*, 2005 ME 86, ¶ 10, 877 A.2d 1083.

Limited Public Figure

Whether a figure is a public figure, and for what purposes, is a question of law. *See Haworth v. Feigon*, 623 A.2d 150, 158 (Me. 1993). A person is a public figure when they have pervasive fame or notoriety or may be classified a "limited public figure" if they voluntarily insert themselves into a public controversy. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351-52 (1974) (limited public figures are those who "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved"). When evaluating whether a person is a limited public figgure "a court's first task is to evaluate whether a public controversy existed prior to the defamatory publication." *Norris v. Bangor Publ'g Co.*, 53 F. Supp. 2d 495, 503 (D. Me. 1999).

There is no clear-cut test for determining whether a particular controversy is a public one, but the First Circuit has established that "purely private disputes do not give rise to public controversies, the implications of the controversy in question must affect the public and not merely the litigants, and the public importance of the issues involved must be considered." *Id.* A matter that attracts public attention is not sufficient to establish a public controversy, it must be shown that those "persons actually were discussing some specific question . . . [and] a reasonable

person would have expected persons beyond the immediate participants in the dispute to feel the impact of its resolution." *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 13 (1st Cir. 2011).

Mr. Rickert identifies the controversy as the firing of Mr. Drinkwater from his position as Rector. This controversy fails to satisfy any of the established requirements for a public controversy. The firing of Mr. Drinkwater was only of concern to the Church community, not the public at large. The allegations in the complaint do not suggest that this matter received any attention from the press, and the publication of the allegedly defamatory statements was a private email to Bishop Marsh. A controversial matter within the Church, a private institution, is not inherently a matter of public controversy just because it may be of concern to the parishioners. The firing of a Rector from a local church, on its own, is not a matter of significant public importance. At the motion to dismiss stage, Mr. Rickert has failed to establish that Mr. Vaill is a limited public figure subject to the actual malice standard of *New York Times Co. v. Sullivan.*

Damages

Mr. Rickert argues that no allegations in the Complaint support a finding that the email containing the allegedly defamatory communication damaged Mr. Vaill. Specifically, Mr. Rickert argues that the email he sent has no relation to Mr. Vaill's profession or occupation, and that Complaint alleges that the email was only sent to Bishop Marsh, and thus could not have injured Mr. Vaill's reputation among the wider community. Mr. Vaill argues that the contents of the email were widely circulated and discussed among the Vestry members by Mr. Rickert and thus made its way into the wider Church community. As for his damages, Mr. Vaill argues that the Church was a "lucrative networking community" for his business, and the reputational damage he suffered caused him to lose potential clients, income, assignments with other churches and other professional relationships.

7

The allegations in the Complaint are sufficient to make out a claim for damages. An alleged loss of potential clients and networking opportunities is an economic loss. Mr. Vaill has plead special damages against Mr. Rickert.

Conditional Privilege

Mr. Rickert argues that his email to Bishop Marsh was conditionally privileged against defamation liability. "A conditional privilege against liability for defamation arises in settings where society has an interest in promoting free, but not absolutely unfettered, speech." *Waugh*, 2019 ME 179, ¶ 10, 222 A.3d 1063 (quoting *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991)). Whether a defendant is entitled to a conditional privilege is a matter of law, but this question of law requires a highly fact sensitive inquiry. Maine follows the Restatement approach, "which uses a weighing approach based on the totality of the circumstances, in view of the interests of the publisher and the recipient. Any situation in which an important interest of the recipient will be furthered by frank communication may give rise to a conditional privilege." *Rice v. Alley*, 2002 ME 43, ¶ 22, 791 A.2d 932 (quoting *Lester*, 596 A.2d at 70).

When a conditional privilege does exist, the defendant can lose the privilege if it "abuses the privilege by making the statement when it either knows the statement to be false or acts in reckless disregard of its truth or falsity (also known as 'actual malice') or when it act[s] entirely out of ill will toward [the plaintiff]." *Waugh*, 2019 ME 179, ¶ 10, 222 A.3d 1063 (quoting *Staples v. Bangor Hydro-Elec. Co.*, 629 A.2d 601, 604 (Me. 1993)).

At the motion to dismiss stage the court cannot analyze the totality of the circumstances to adequately determine whether Mr. Rickert's statement was subject to a conditional privilege. Even if the context of his allegedly defamatory statement would give rise to a conditional

8

privilege, Mr. Vaill has sufficiently alleged that the statement was made entirely out of ill will towards him.

Non-Actionable Opinion

Mr. Rickert argues that his statement was entirely composed of subjective opinions, not statements of objective fact. A false statement in a defamation claim must be "an assertion of fact, either explicit or implied, and not merely an opinion, provided the opinion does not imply the existence of undisclosed defamatory facts." *Lester*, 596 A.2d at 69. "The determination whether an allegedly defamatory statement is a statement of fact or opinion is a question of law . . . [but if] the average reader could reasonably understand the statement as either fact or opinion, the question of which it is will be submitted to the [fact-finder]." *Ballard v. Wagner*, 2005 ME 86, ¶ 11, 877 A.2d 1083 (quoting *Caron v. Bangor Publ'g Co.*, 470 A.2d 782, 784 (Me. 1984)). In assessing whether a statement expresses fact or opinion, the court looks to the "totality of the circumstances and to whether the statement was intended to state an objective fact or a personal observation." *Ballard*, 2005 ME 86, ¶ 11, 877 A.2d 1083.

Mr. Rickert's email described Mr. Vaill as "unchristian" and a "bully." At this stage, the court cannot analyze the totality of the circumstances to determine whether these terms, especially "unchristian," were statements of fact or opinion, or were alluding to the existence of undisclosed defamatory facts. The allegations in the Complaint are sufficient to convince the court that Mr. Rickert's email is susceptible to being understood as containing at least some statements of fact.

The entry is

9

Defendant Steve Rickert's Motion to Dismiss is hereby DENIED.

The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date:   January 18, 2023

_____
Harold Stewart, II
Justice, Superior Court

10