MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 189
Docket:        Yor-16-538
Argued:        June 14, 2017
Decided:       September 7, 2017
Revised:       November 30, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:      SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.
Dissent:       JABAR, J.

BRUCE PLANTE et al.

v.

RONALD P. LONG


GORMAN, J.

[¶1]   Bruce and Dennis Plante appeal from the entry of a summary judgment in the Superior Court (York County, *Douglas, J.*) in favor of Ronald P. Long on their defamation action.  The court concluded that the Plantes failed to make the necessary prima facie showing that Long acted with actual malice. We affirm the judgment.

## I.  BACKGROUND

[¶2]   The following facts are taken from the parties' statements of material fact and reflect the summary judgment record in the light most

favorable to the plaintiffs as the "part[ies] against whom summary judgment was entered."[1] *See Diviney v. Univ. of Me. Sys.*, 2017 ME 56, ¶ 14, 158 A.3d 5.

[¶3] Bruce is the Assistant Fire Chief for the Town of Berwick. He also works as a delivery driver for Gagnon Propane and previously served on the Town's Board of Selectmen. Dennis is the Fire Chief for the Town of Berwick. Long is a resident of Berwick and has a history of publicly criticizing the Berwick Fire Department, including its leadership, and opposing proposed fire department projects. The plaintiffs have both conceded that they are public figures.[2]

[¶4] On October 27, 2011, Long was jogging with his wife on Worster Road in Berwick. Bruce, who was driving a propane truck down that road, "pulled wide around" Long, who waved. Bruce perceived Long's wave and facial expression as harassing and was "upset." He pulled the truck to a stop about 150 feet from Long and, while "hanging on the edge of the truck" and raising his voice due to the distance between them, twice yelled to Long,

---

[1] On appeal, Bruce challenges the court's grant of summary judgment as to Counts 2 and 3 of the complaint, which concern emails sent by Long on October 28, 2011. Dennis challenges the judgment as to Counts 5 and 6, which concern emails sent by Long on April 24, 2012, and May 23, 2012. The Plantes also challenge the court's grant of summary judgment in Long's favor as to Count 9 for punitive damages. We address only those facts relevant to the counts at issue on appeal.

[2] Long attempted to have the suit dismissed in its entirety pursuant to the anti-SLAPP statute, 14 M.R.S. § 556 (2016). We affirmed the trial court's (*Fritzsche, J.*) determination that this attempt was not timely. *Plante v. Long*, Mem-15-91 (Nov. 10, 2015).

"[H]ey, are you looking for me?" After Long replied that he was not looking for Bruce and that he had "just [been] waving," Bruce responded, "[D]on't bother." Bruce got back in the truck and drove away. Although he had intended to "let Mr. Long know he wanted nothing to do with him," Bruce had not intended to "instigate a fight."

[¶5] The next day, Long sent an email to the chief and a captain of the Berwick Police Department alleging that Bruce was harassing him and recounting the events of the previous day. In the email, Long stated that Bruce had yelled, "Hey do you want some of this? Are you fucking looking for me?" and, "Hey I said do you want some of this? Are you looking for me?" Long stated that he had heard that Bruce had "tried to intimidate [several other people] by this very behavior," and he asked the police to contact those people to "further [their] investigation." Long further stated that "[Bruce] is clearly mentally unstable and I fear for what he is capable of doing. . . . [He] is in a position to make me worry about the safety of my family and myself." The same day, copying Berwick's police chief and another individual, Long sent a second, very similar email to Bruce's employer at Gagnon Propane.

[¶6]  At some point,[3] Dennis drove behind Long in a vehicle with fire department insignia on it.  There were initially two other vehicles between the parties' cars.  Long turned down another road, pulled over, pulled back onto the road after Dennis passed him, and followed Dennis.

[¶7]  On April 24, 2012, Long sent an email to the Berwick Board of Selectmen and others, stating in part that the Plantes had been following and harassing people.  On May 23, 2012, Long sent an email to the Berwick police chief and copied another individual.  The email stated in part that Bruce and Dennis had "lied, followed, intimidated, and harassed people to get 'Their Cause' pushed through."

[¶8]  In June of 2013, the Plantes filed a complaint against Long containing eight counts of libel and one count of punitive damages.  Over the course of nearly three years, the parties engaged in a protracted discovery process and motion practice.  Although they failed to reach complete agreement through alternative dispute resolution, they did stipulate to the dismissal of Counts 1 and 7 of the complaint.  In May of 2016, Long filed a motion for summary judgment on the remaining seven counts, which the

---

[3] The record provides no temporal information about this event.

5

court granted on November 7, 2016, after a nontestimonial hearing. The Plantes timely appealed.

## II. DISCUSSION

[¶9] This appeal requires us to determine, viewing the facts in the light most favorable to the Plantes as the nonmoving parties, whether any genuine issue of material fact exists and whether Long is entitled to judgment as a matter of law. *Diviney*, 2017 ME 56, ¶ 14, 158 A.3d 5; *see* M.R. Civ. P. 56(c). "When the defendant is the moving party, [he] must establish that there is no genuine dispute of fact and that the undisputed facts would entitle [him] to judgment as a matter of law. It then becomes the plaintiff's burden to make out a prima facie case and demonstrate that there are disputed facts." *Diviney*, 2017 ME 56, ¶ 14, 158 A.3d 5 (alterations omitted) (citation omitted) (quotation marks omitted). We will assume, for purposes of this opinion, that the statements made by Long were false.[4] The issue to be decided, therefore, is whether the Plantes have made a prima facie showing of actual malice.[5]

---

[4] Although there are many factual disputes about what each party actually said or did during the incidents that Long complained about, a trier of fact who believed the Plantes' versions of what occurred could rationally find that Long's statements describing the incidents were false.

[5] Long also asserts that his statements consisted of opinion rather than fact and were therefore not actionable. Because we conclude that the Plantes have failed to make the required prima facie showing of actual malice, however, we do not reach that issue.

*See Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991) (setting out the elements of defamation).

[¶10] The Plantes are public figures and, as we have explained,

[d]iscussion of public officials and public figures on matters of public concern, the U.S. Supreme Court has declared, deserves special favor in a democratic society, and thus such discussion is subject to a conditional privilege—the "First Amendment privilege"—that can be overcome only by clear and convincing evidence of [actual malice, i.e.,] knowledge or disregard of falsity.

*Id.* at 69 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). Thus, in order to survive summary judgment, the Plantes must present some evidence that at least one of Long's false statements was made with "'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 659 (1989) (quoting *Sullivan*, 376 U.S. at 279-80). In other words, they must produce evidence that could demonstrate that it is highly probable that, at the time he sent the allegedly defamatory emails, Long in fact knew that his statements were false or that he acted "with [a] high degree of awareness of their probable falsity." *Michaud v. Town of Livermore Falls*, 381 A.2d 1110, 1116 (Me. 1978) (quotation marks omitted); *see Taylor v. Comm'r of Mental Health & Mental Retardation*, 481 A.2d 139, 154 (Me. 1984) (explaining that the "clear and convincing" standard of proof, which protects

"important public interest[s]," requires a plaintiff to prove her allegations "to a high probability").

[¶11]  In response to Long's motion for summary judgment, the Plantes offered evidence contradicting Long's accounts of the events in question and demonstrating a contentious history between the parties. *See supra* ¶¶ 4-7.  If believed by a trier of fact, the same evidence that showed Long's statements to be false and the relationship between Long and the Plantes to be contentious could also give rise to an inference that Long bore the Plantes ill will. Contrary to the Plantes' assertions, however, the evidence of falsity, even combined with the inference of ill will, would not be sufficient to support a clear and convincing determination of actual malice.

[¶12]  The element of objective falsity is distinct from that of actual malice.  At trial, a fact-finder must be presented with sufficient evidence to allow her to conclude that the defendant "'*in fact entertained serious doubts as to the truth of his publication*'" regardless "of the assumed objective *falsity* of the remarks." *Michaud*, 381 A.2d at 1114-15 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).  We have consistently refused to conclude that a fact-finder may infer that a defendant was "consciously untruthful" from evidence that her accusations were in fact false even if that evidence coincides

with indicia of the defendant's ill will towards the plaintiff, e.g., that the defendant destroyed or discarded her written records of the events in question. *Lester*, 596 A.2d at 71-72 (concluding that the plaintiff's proposed inference of actual malice was "unsupported speculation" and inadequate to survive a defendant's motion for summary judgment); *see Michaud*, 381 A.2d at 1115-16. Rather, we have been clear that "[e]vidence that some of [the defendant's] factual premises were objectively false, or even that no reasonable person could have believed them to be true, does not show that she knew or disregarded their falsity." *Lester*, 596 A.2d at 71. Permitting a fact-finder to draw such an inference would effectively merge the elements of falsity and actual malice, thereby reducing the heightened burden assumed by public figure plaintiffs in defamation actions and diminishing the "breathing space" for protected speech that *Sullivan* and its progeny require. *Harte-Hanks*, 491 U.S. at 686 (quotation marks omitted); *see Lester*, 596 A.2d at 69 (citing *Sullivan*, 376 U.S. at 279-80).

[¶13] Nonetheless, the Plantes argue that we "reach[ed] too far" in *Lester* and that we *should* merge the elements of falsity and malice in cases involving "personal knowledge." Their argument ultimately relies on language the United States Supreme Court included in a decision in which it

9

reversed a libel judgment. *See Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971) (concluding that a magazine article summarizing a report by the United States Commission on Civil Rights that discussed police brutality did not demonstrate actual malice). In explaining its holding, the Court determined that the Court of Appeals had erred in concluding that "'malice' in the sense of an 'intent to inflict harm through falsehood' . . . might reasonably be inferred from the very act of deliberate omission, and the issue of malice was consequently one for the jury." *Id.* at 285. The Court went on to state, however, that it might be reasonable to infer actual malice from an act of deliberate omission "when the alleged libel purports to be an eyewitness or other direct account of events that speak for themselves." *Id.*

[¶14] Twelve years later, the Court again discussed the "eyewitness" inference mentioned in *Pape* and emphasized that its applicability was limited to circumstances where the events at issue are so defined or obvious that there is no room for ambiguity:

> [T]he only evidence of actual malice on which the District Court relied was the fact that the statement was an inaccurate description of what [the eyewitness] had actually perceived. [The eyewitness] of course had insisted "I know what I heard." The trial court took him at his word, and reasoned that since he did know what he had heard, and he knew that the meaning of the language employed did not accurately reflect what he heard, he must have realized the statement was inaccurate at the time he

wrote it. Analysis of this kind may be adequate when the alleged libel purports to be an eyewitness or other direct account *of events that speak for themselves.* Here, however, adoption of the language chosen was one of a number of possible rational interpretations of an event that bristled with ambiguities and descriptive challenges for the writer. The choice of such language, though reflecting a misconception, does not place the speech beyond the outer limits of the First Amendment's broad protective umbrella.

*Bose Corp. v. Consumers Union of the U.S., Inc.*, 466 U.S. 485, 512-513 (1984) (citations omitted) (quotation marks omitted).[6]

[¶15] This restriction on the applicability of the eyewitness inference—that the inference may be made only when the events "speak for themselves"—is also found in two cases the Plantes rely on in their assertion that the falsity of Long's statements should be sufficient to allow an inference of malice. The first is *Mahoney v. Adirondack Publishing Co.*, 517 N.E.2d 1365 (N.Y. 1987), a case in which the New York Court of Appeals considered the eyewitness inference before ultimately deciding that it provided no support for the plaintiff. The New York court held:

The inference depends for its validity on the premise that the eyewitness could not have perceived and understood anything but the truth. Thus, in reporting something else, the observer

---

[6] In its decision, the First Circuit referred to the need for "objective facts" that "should provide evidence of negligence, motive, and intent such that an accumulation of the evidence and appropriate inferences supports the existence of actual malice." *Bose Corp. v. Consumers Union of the U.S., Inc.*, 692 F.2d 189, 196 (1st Cir. 1982).

must have departed from the truth by design. The underlying premise is valid, however, only if the events were unambiguous and the setting was such that the observer could not have misperceived those events. *Such conditions, however, cannot simply be assumed; as the proponent of the inference and the bearer of the burden of proof of actual malice, the plaintiff must demonstrate that they exist.* No such showing was made here.

*Id.* at 1369 (emphasis added).

[¶16] The second is *Ventura v. Kyle*, 8 F. Supp. 3d 1115 (D. Minn. 2014), a defamation action arising from a passage in Chris Kyle's autobiography describing an altercation with Jesse Ventura. In that case, Ventura asserted, inter alia, that Kyle's claim that he had punched Ventura was completely false because there had never been any kind of physical altercation between them. *Id.* at 1121-22. The United States District Court for the District of Minnesota denied summary judgment to Kyle after concluding that, although it was possible that he had misperceived Ventura's *words*, Kyle's statement of "punching out" Ventura did not relate to an ambiguous event and, therefore, an inference of actual malice could be drawn from the falsity of the statement. *Id.*

[¶17] Even assuming that these cases demonstrate that some other courts are moving towards a less rigorous review of the element of malice, neither provides any support for the Plantes because they have not carried

*their burden* of showing that the events in question were unambiguous or that Long could not have misperceived them or, alternatively, that an event described by Long never occurred.

[¶18]  According to his version of events, Bruce—who admits to being "upset" at the time and believing that Long was "harassing" him—pulled his truck over 150 feet from Long, "[hung] on the edge of the truck," and yelled at Long, "[A]re you looking for me?" and "[D]on't bother."  Bruce's account of the incident is strikingly similar to Long's and, given Bruce's acknowledgement that he was upset and yelling and the considerable distance between the parties, what Bruce actually said could have been misperceived by Long. *Cf. Mahoney*, 517 N.E.2d at 1369-70.  Likewise, Dennis admits to having driven a fire department vehicle behind Long for a period of time, an event that could have been misperceived by Long given his apparent fear of Bruce, his belief that Dennis never disciplined or controlled Bruce, and his history of criticizing the fire department.  These events bear a great resemblance to those in *Mahoney*, *see id.*—events capable of misperception and thus not suitable to support any inference of actual malice.  They do not resemble the issue in *Ventura*—where the parties' dispute concerned whether a physical altercation

13

had or had not occurred, an event that could not have been misperceived, *see Ventura*, 8 F. Supp. 3d at 1121-22.[7]

[¶19]  Even if we were to adopt such an "eyewitness"  inference, it would not be applicable here.  Although we agree that Long might fit the definition of an eyewitness, the events he described do not "speak for themselves," so the Plantes gain no benefit from the application of any possible eyewitness inference of actual malice.[8]  Because the Plantes have

_____

[7]  The Plantes also draw our attention to *Welsh v. City and County of San Francisco*, No. C-93-3722, 1995 WL 714350 (N.D. Cal. Nov. 27, 1995), in which the parties disputed whether the defendant had in fact "physically grabbed and kissed the plaintiff against her will."  *Id.* at *5 (alterations omitted) (quotation marks omitted).  Although the United States District Court for the Northern District of California merged the elements of falsity and actual malice, we note that—just as in *Ventura*—the material fact in dispute was whether an incident of physical contact had occurred.  *See id.*  Whether such physical contact occurred is an unambiguous event, i.e., an event that neither party could have misperceived.

[8]  A third opinion of the United States Supreme Court also bears on Bruce's claims on appeal. In *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991), the Court held that an author's "deliberate alteration of the words uttered by a plaintiff does not equate with knowledge of falsity . . . unless the alteration results in a material change in the meaning conveyed by the statement."  *Id.* at 517.  In so holding, the Court explained that the "protection for rational interpretation" of ambiguous events enunciated in *Pape* and *Bose* does not extend to "[the] orthodox use of a quotation" by an author—"the quintessential direct account of events that speak for themselves."  *Id.* at 519 (quotation marks omitted).

Although Long's October 28, 2011, emails attributed the use of specific language to Bruce using quotation marks, *Masson* does not save Bruce's claims from summary judgment.  The differences between Long's and Bruce's accounts of the events of October 27, 2011, are not material.  *See supra* ¶ 18.  Given the parties' underlying relationship, the addition or omission of a single instance of profanity and the words "[D]o you want some of this?" are not significant; either version of events leads the reader to conclude that a hostile interaction took place alongside the road that day. *See Masson*, 501 U.S. at 517 ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." (quotation marks omitted)).  Further, Long's use of quotation marks was not the "orthodox" or "quintessential" use contemplated by the Court in *Masson*.  *Id.* at 519.  In stark contrast to Long's hasty report of his interaction with Bruce, *Masson* considered the use of quotations that an author for the New Yorker Magazine incorrectly attributed to the plaintiff although she had access to many hours of taped interviews against which to verify

failed to produce any evidence of the sort required to establish actual malice—evidence of the defendant's negligence, motive, and intent—they could not prevail at trial, and Long is entitled to a summary judgment.

The entry is:

Judgment affirmed.

---

JABAR, J., dissenting.

## I. INTRODUCTION

[¶20]  I respectfully dissent because the Court has improperly used summary judgment to resolve factual disputes regarding motivation, knowledge, or intent.  The plaintiffs, Dennis and Bruce Plante, are entitled to have a jury decide whether Long fabricated facts surrounding events that occurred between the Plantes and Long.

---

her allegedly libelous statements and although the plaintiff had informed a fact-checker at the magazine that the quotations were incorrect.  *Id.* at 500-02, 513.  Indeed, the Court anticipated just such a case as the Plantes present to us today, acknowledging—after discussing the significance of quotation marks—that the fact that "the [allegedly defamatory] work . . . recreates conversations from memory, not from recordings, might indicate that the quotations should not be interpreted as the actual statements of the speaker to whom they are attributed."  *Id.* at 512-13.  Long's use of quotations, which were based solely on his memory of a somewhat unusual interaction, is therefore not dispositive in this instance.  *See id.* at 517 ("The use of quotations to attribute words not in fact spoken bears in a most important way on [the actual malice] inquiry, but it is not dispositive in every case.").

## II. DISCUSSION

[¶21]  The Court correctly sets out the actual malice element of the Plantes' defamation claim against Long, that the Plantes must prove "that the defamatory material was published with actual malice."  *Ballard v. Wagner*, 2005 ME 86, ¶ 10, 877 A.2d 1083.  Proof of actual malice requires establishing "that the statements were made with knowledge of their falsity or with reckless disregard for their truth or falsity."  *Id.* ¶ 15.

[¶22]  Although "[f]alsity and actual malice are distinct concepts," and therefore each must be proven to establish a claim for defamation of a public official, "[i]t may be possible, as the United States Supreme Court has suggested, that proof of falsity will support an inference of actual malice when the alleged libel purports to be an eyewitness or other direct account of events that speak for themselves."  *Mahoney v. Adirondack Publ'g Co.*, 517 N.E.2d 1365, 1369 (N.Y. 1987) (citation omitted) (quotation marks omitted).  This "inference depends for its validity on the premise that the eyewitness could not have perceived and understood anything but the truth." *Id.*  The crux of the inference therefore lies in the alleged defamatory statements describing a version of the facts that the plaintiff disputes, as

opposed to the alleged defamer's perception or interpretation of ambiguous events. *See id.*

[¶23] In *Ventura v. Kyle*, a case discussed by the Court, Court's Opinion ¶ 16, and relied upon by the Plantes to support their assertion that the falsity of Long's statements may be sufficient to prove actual malice, the United States District Court for the District of Minnesota considered a defamation case concerning an autobiography written by Chris Kyle containing a passage in which he claimed to have punched former wrestler, actor, and Minnesota Governor Jesse Ventura in the midst of a scuffle at a bar. 8 F. Supp. 3d 1115, 1116-17 (D. Minn. 2014). The court concluded that Ventura, through affidavits of witnesses to the encounter, "presented sufficient evidence to create a genuine issue of fact as to whether Kyle knowingly . . . published false statements." *Id.* at 1122. Although the court stated that "it is possible Kyle could have misinterpreted Ventura's comments to him and innocently published a false account of them," because a jury could find, based on the evidence, that Kyle falsely wrote in his book that he had punched Ventura, the jury "could reasonably conclude he fabricated the rest of his story." *Id.* at 1121-22 (emphasis omitted). The court therefore determined that a jury

could infer from *one* false statement concerning an unambiguous event that Kyle's *entire* recitation of the encounter was false. *Id.*

[¶24] *Ventura* is unlike *Michaud v. Town of Livermore Falls*, in which we held that where a "meeting led to high emotions and resulted in widely varying perceptions and interpretations of the participants' conduct, depending upon each viewer's degree and position of involvement," there was no proof of knowledge or reckless disregard for the falsity of a letter criticizing a plaintiff who had been a participant at the meeting. 381 A.2d 1110, 1115 (Me. 1978). In *Michaud*, we concluded that, "although [the letter was] possibly biased and exaggerated," there was no evidence that it "was not an *honest* communication relating the author's own interpretation of the plaintiff's conduct." *Id.* Here like the facts in *Ventura* and unlike the facts in *Michaud*, the jury could infer that Long was not *honest* about the participants' conduct.

[¶25] We have applied a similar reasoning when determining whether an allegedly defamatory statement consisted of opinion alone, and was therefore not actionable, or consisted of facts and was therefore actionable. *Lester v. Powers*, 596 A.2d 65, 71-72 (Me. 1991); *see Lightfoot v. Matthews*, 587 A.2d 462, 463 (Me. 1991) (stating that a statement of fact is "an essential

element in an action for defamation"). In differentiating between fact and opinion, we ask whether "it is clear from the surrounding circumstances that the maker of the statement did not intend to state an objective fact but intended rather to make a personal observation on the facts." *Caron v. Bangor Publ'g Co.*, 470 A.2d 782, 784 (Me. 1984).

[¶26] We have held in many cases that issues of intent or animus can rarely be decided as a matter of law. *See, e.g.*, *Beal v. Bangor Publ'g Co.*, 1998 ME 176, ¶ 8, 714 A.2d 805. In *Trott v. H.D. Goodall Hosp.*, a case involving employment discrimination, we acknowledged that "direct evidence of discriminatory animus will rarely be available." 2013 ME 33, ¶ 19, 66 A.3d 7 (quotation marks omitted); *see also Levesque v. Doocy*, 560 F.3d 82, 90 (1st Cir. 2009) (stating that "direct evidence of actual malice is rare"). Furthermore, "[a] factual determination of a motivation issue is heavily dependent on inferences, circumstantial evidence, and credibility determinations that do not easily allow resolution by summary judgment." *Stanley v. Hancock Cty. Comm'rs*, 2004 ME 157, ¶ 36, 864 A.2d 169 (Alexander, J., dissenting).

[¶27] Therefore, we must here consider whether there is any dispute of fact presented in the parties' statements of material facts from which a jury

could infer that Long knew his versions of the event he described in his emails were false. The jury should decide whether Long intended to state definitive facts in his emails, or instead intended to state his perception or opinion of the events giving rise to the emails. Although the Plantes contend that Long made many defamatory statements, this case revolves around two events—an incident between Long and Bruce, and an incident between Long and Dennis. First, Long's October 28, 2011, emails referenced an encounter on October 27, 2011, in which Long alleged that Bruce saw Long out jogging while Bruce was driving a propane delivery truck, got out of the truck, and screamed profanity-laced threats at Long. Second, Long's April 24, 2012, emails referenced an encounter where Long asserted that Dennis followed him. If the events referenced by these emails are ambiguous or susceptible to misperception, there can be no inference that Long acted with actual malice because his emails, though possibly false, show only a misinterpretation of events. *See Ventura*, 8 F. Supp. 3d at 1121; *see also McMurry v. Howard Publ'ns, Inc.*, 612 P.2d 14, 18 (Wyo. 1980) ("A subjective awareness of probable falsity cannot be demonstrated under the standard of 'convincing clarity' by evidence showing that the publisher and the plaintiff disagreed with respect to their *perceptions* of events which they both observed." (emphasis added)).

If, however, the events as recounted in Long's emails are unambiguous and nonetheless significantly differ from the Plantes' asserted version of events, then the Plantes are entitled on summary judgment to the benefit of the inference that Long, as an eyewitness to unambiguous events, made false statements in his emails with knowledge of the falsity of his statements. *Ventura*, 8 F. Supp. 3d at 1121-22; *see Mahoney*, 517 N.E.2d at 1369.

A.    Counts 2 and 3: Long's Encounter with Bruce

[¶28]    Counts 2 and 3 claimed as defamatory Long's emails of October 28, 2011—to the chief of police, a police captain, and Bruce's employer at Gagnon Propane—which recounted Long's version of the October 27 incident.    Long's emails both contained the subject line "Harassment complaint" and indicated that he wanted to file a harassment complaint—and possibly seek a restraining order—against Bruce.    Long asserted in the emails that as he and his wife were jogging, Bruce passed them driving a truck, to which Long waved.    The emails then state that Bruce stopped his vehicle, hung out the side, and screamed, "Hey do you want some of this? Are you fucking looking for me?"    After Long ignored him, Bruce got much louder and screamed, "Hey I said do you want some of this? Are you looking for me?" to which Long replied, "No, just waving."    According to the

emails, Bruce then responded, "Don't bother," got back into the truck, and left. Additionally, the emails state that Bruce "is clearly mentally unstable" and that Long "fear[s] what he is capable of doing." Long admitted to the content of the emails in his response to the Plantes' statement of material facts.

[¶29] The Plantes' statement of material facts, however, describes an event with significant differences from that indicated by Long's emails. According to the Plantes, Long smirked at Bruce as Bruce was driving by, Bruce stopped the truck to ask if Long was looking for him, and Long replied "no, I was just waving," after which Bruce told him "don't bother" and drove away. The Plantes denied that Bruce used profanities during the encounter and denied that he "screamed" at Long.

[¶30] There is no question that Long and the Plantes gave very different versions of what occurred on October 27, 2011. If Long is believed, Bruce intimidated and harassed him with provoking language, screaming, "Are you fucking looking for me?" and "Hey do you want some of this?" Long treated this as threatening language, stating in his email that he feared what Bruce was "capable of doing." If Bruce is believed, the exchange was less provocative: Bruce inquired in a raised voice whether Long was looking for him, but he did not scream profanities or yell "do you want some of this?"

Long's use of quotation marks in his email makes it clear that there was no misunderstanding of what he heard, and that he was directly attributing to Bruce the threatening language and behavior. Long's use of quotation marks is evidence that Long was not simply stating his perception of what happened, rather, it was a precise description of the event. His version of the encounter is not an ambiguous interpretation; it is an unambiguous transcript of Bruce's words—one that the Plantes dispute. *See Mahoney*, 517 N.E.2d at 1369.

[¶31] Because "words and punctuation express meaning," and "quotations may be a devastating instrument for conveying false meaning," *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991), the difference in words attributable to Bruce during this October 27 encounter is dispositive here. If Bruce is believed, then the jury could infer that Long fabricated the words and conduct he attributed to Bruce in the October 28 emails, and also infer that he did so with knowledge of the falsity of his statements. *See Michaud*, 381 A.2d at 1115. A jury would need to decide between two competing versions of the truth—Long's and the Plantes'—and determine whether the encounter was benign or antagonizing. There is a genuine dispute of material fact as to what Bruce in fact said to Long and whether Long fabricated his version of events. *See Estate of Lewis v. Concord Gen. Mut. Ins.*

*Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732 ("A genuine issue of material fact exists when the [jury] must choose between competing versions of the truth." (quotation marks omitted)).  If the jury believes Bruce, then just as the court stated in *Ventura*, 8 F. Supp. 3d at 1121-22, it could infer that Long fabricated the statements in his emails attributed to Bruce, and also infer that Long had knowledge of the falsity of his emails.  It is not for us to decide, as the Court does, the import of the parties' relationship and whether the interaction was "hostile," Court's Opinion ¶ 19 n.8, we need consider only whether the dispute over the facts is material.  Here, the parties genuinely dispute what occurred between them on October 27, and whether Long gave an honest version of events in his emails.  A jury should determine who is telling the truth.

B.    Counts 5 and 6: Long's Encounter with Dennis

[¶32]  Count 5 alleges that Long's statements in his April 24, 2012, email to the Berwick Board of Selectmen—stating that both Bruce and Dennis were following and harassing Berwick residents—is defamatory.  Count 6 similarly alleges as defamatory Long's May 23, 2012, email to the chief of police stating that Bruce and Dennis "lied, followed, intimidated, and harassed people" in Berwick.  The Plantes contend that summary judgment for Counts 5 and 6 was inappropriate as to Dennis because "the only information Long had of Dennis

following someone was a single occurrence where [Long] claims to have been followed by Dennis."

[¶33] Long admitted to the Plantes' statement of material fact that he has never been followed by Bruce, and in his deposition, Long recounted only one occasion on which he was ever followed by Dennis. He stated that he was driving in Berwick toward Rochester when he noticed Dennis following in a white SUV "no more than four or five feet" behind him, and that he pulled over to the side of the road to let Dennis pass.

[¶34] Dennis provided a very different version of the incident. Dennis acknowledged that he was in a vehicle behind Long, but he stated that there were two cars between them and that when he and Long turned right at an intersection, the other two cars turned left, so that Dennis's vehicle pulled up behind Long's. According to Dennis, Long pulled to the side of the road, at which point Dennis passed him, and then Long then followed him, making several identical turns, and following Dennis onto a dead end road into an industrial park, including a U-turn out of the industrial park. Dennis stated that Long stopped only when Dennis pulled to the side of the road to let him pass.

25

[¶35] As with the October 28 emails related to the October 27 jogging incident, Long and the Plantes present two very different versions of the facts. Taking the facts and all reasonable inferences in the light most favorable to the Plantes, *see Budge v. Town of Millinocket*, 2012 ME 122, ¶ 12, 55 A.3d 484, a jury could infer that Long knew of the falsity of his statement in the April 24, 2012, and May 23, 2012, emails that Dennis "followed" him.

[¶36] It is up to the jury to determine the credibility of the parties and decide who has told the truth. *See State v. Hodsdon*, 2016 ME 46, ¶ 8, 135 A.3d 816. The question of whether there were other cars in between Dennis's and Long's vehicles and whether Long then followed Dennis are questions of unambiguous fact, rather than, as Long argues, subjective belief regarding Dennis's intentions. *See Caron*, 470 A.2d at 784. It is one thing to misperceive being followed by another vehicle, even if several car lengths behind, but there is no ambiguity to Dennis's assertion that Long then pulled over and followed Dennis, making several identical turns, and Long did not deny doing so. If the jury were to believe Dennis's version of events, rather than Long's, it could infer that Long fabricated his story, which would allow it to infer that Long acted with actual malice. *See Mahoney*, 517 N.E.2d at 1369. The dispute over which version of events is true is a genuine dispute of material fact, *see*

*Estate of Lewis*, 2014 ME 34, ¶ 10, 87 A.3d 732, and the court erroneously granted Long's motion for summary judgment as to Counts 5 and 6, insofar as those counts relate to Dennis.

## III. CONCLUSION

[¶37]   The dissent in *Stanley v. Hancock County Commissioners* stated that

> recently, liberal use of summary judgment practice to resolve factual disputes regarding motivation or intent—almost always in favor of a defendant—has been sharply criticized as violative of both the basic purpose of the summary judgment rule and the essential right to a trial by jury guaranteed by our state and federal constitutions and our civil rules.  Arthur R. Miller, one of the preeminent civil practice scholars of our time, observes that: "Overly enthusiastic use of summary judgment means that trialworthy cases will be terminated pretrial on motion papers, possibly compromising the litigants' constitutional rights to a day in court and jury trial."

2004 ME 157, ¶ 38, 864 A.2d 169 (Alexander, J., dissenting) (footnotes omitted) (citing Arthur R. Miller, *The Pretrial Rush to Judgment: Are the "Litigation Explosion," "Liability Crisis," and Efficiency Cliches Eroding Our Day In Court and Jury Trial Commitments?* 78 N.Y.U. L. Rev. 982, 1071 (2003)). Miller has also observed that

> when viewing the material on a pretrial motion without the safeguards and environment of a trial setting, courts may be tempted to treat the evidence in a piecemeal rather than cumulative fashion, draw inferences against the nonmoving party,

> or discount the nonmoving party's evidence by weighing it against contradictory evidence. Judges are human, and their personal sense of whether a plaintiff's claim seems "implausible" can subconsciously infiltrate even the most careful analysis. Encouraged by systemic concerns suggesting that summary judgment is desirably efficient, judges may be motivated to seek out weaknesses in the nonmovant's evidence, effectively reversing the historic approach.

Miller at 1071.

[¶38]  Here, the Court has compared Long's versions with the Plantes' versions and determined that the two are similar enough that the Plantes cannot prove that Long fabricated his version of the events. I disagree. Long's assertions in his emails that he felt intimidated by the Plantes' behaviors do not automatically transform his statements about the events to which he and the Plantes were eyewitnesses into misperceptions or statements of opinion. Long's emails recount facts regarding the incidents, and several of those facts are material and disputed by the Plantes. Because the Plantes are the nonmoving party, they are entitled to all favorable inferences and, in this case, to have their claims heard by a jury.

[¶39]  For these reasons I would vacate the court's summary judgment and remand for trial.

Gene R. Libby, Esq., and Tyler J. Smith, Esq. (orally), Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellants Bruce Plante and Dennis Plante

Jonathan W. Brogan, Esq. (orally), and Joshua D. Hadiaris, Esq., Norman, Hanson & DeTroy, LLC, Portland, for appellee Ronald P. Long

York County Superior Court docket number CV-2013-148
FOR CLERK REFERENCE ONLY