**Peter A. BAKAL**

v.

**Kathryn M. WEARE et al.**

Supreme Judicial Court of Maine.

Argued Nov. 13, 1990.

Decided Dec. 18, 1990.

Richard N. Sharood (orally), Kennebunk, for plaintiff.

Theodore H. Kirchner (orally), Norman, Hanson & Detroy, Portland, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD, COLLINS, and BRODY, JJ.

McKUSICK, Chief Justice.

Plaintiff Peter Bakal appeals from the summary judgment entered by the Superior Court (York County, *Cole, J.*) in this libel action in favor of defendants Kathryn Weare and The Cliff House & Motels, Inc.[1] Because we find that the complained-of statement in context cannot reasonably be interpreted as defamatory, we affirm.

Kathryn Weare is the manager and owner of the Cliff House, an oceanfront resort in York. Peter Bakal owns nearby oceanfront property. The relationship between Bakal and Weare has been strained over the years. At various times Bakal has written her to complain about real or perceived problems with sewage disposal at the Cliff House or the validity of permits granted Weare to perform renovations and expansions at the resort. He has complained about these same problems to the Town Planning Board and has three times appealed the Town's rulings in Weare's favor to the Superior Court, never with any success. In 1988 tests of the hotel's septic system, conducted at Bakal's insistence, revealed no leaks or contamination of surface water. Because Bakal was suspicious that the tests had been improperly done, he wrote the Town Code Enforcement Officer,

Timothy DeCouteau, reminding DeCouteau of written complaints already filed by himself and other neighbors and asking that the septic system at the hotel be closed until further tests were performed. New tests were scheduled and plans made for Bakal to show DeCouteau's assistant exactly where on the cliffs below the hotel he believed there was contaminated outflow. When Weare learned of this plan, she wrote DeCouteau telling him that she did not want Bakal on her land at the time of the upcoming inspection by DeCouteau, stating, "Considering the ten years of complaints and threats, I'm sure you understand our position." After CEO DeCouteau showed Bakal this letter, Bakal demanded that Weare retract the statement. When she refused, he filed this suit for libel, alleging that the reference to "ten years of ... threats" was false and defamatory.

On her motion for summary judgment, Weare argued that there had been no defamation because the addressee and as she argues the sole recipient of the letter, CEO DeCouteau, stated by affidavit that the letter did not convey any defamatory meaning to him. The court found this argument persuasive and entered judgment for Weare. Bakal appeals.

■ To make out a claim for libel, the plaintiff must show that there has been publication to a third party of a false and defamatory statement. *See Restatement (Second) of Torts* § 558 (1977). A communication is defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* § 559. The issue of publication is a question of fact for the jury. *Id.* § 617.

■ At the motion hearing Weare argued that publication had been made only to CEO DeCouteau. Bakal disagreed, pointing to DeCouteau's deposition testimony that he had placed the letter in a file open to the public and, further, that the file

1. Since the corporate defendant's liability is derivative from that of defendant Kathryn Weare, this opinion will refer only to the individual defendant.

was consulted by individuals involved in construction work at the Cliff House. Because there exists a genuine issue of fact in regard to the scope of the publication of Weare's letter, the court erred in entering summary judgment on the basis of the non-defamatory reading that DeCouteau gave the letter. *See* M.R.Civ.P. 56(c). Nonetheless, even though the basis for the court's entry of summary judgment for Weare was erroneous, we affirm the judgment because there exists another reason why she is entitled to judgment as a matter of law. *See Small v. Colbeth,* 447 A.2d 82, 82 (Me.1982).

 Whether the statement complained of is capable of conveying a defamatory message at all is a question of law. *See Chapman v. Gannett,* 132 Me. 389, 391, 171 A. 397, 398 (1934); *Bradburg v. Segal,* 121 Me. 146, 148, 116 A. 65, 66 (1922); *see also Restatement (Second) of Torts* § 614. We reject Bakal's approach that interprets the word "threats" in the most negative possible way to mean threats of physical violence. Weare's statement is simply too vague to bear such an interpretation. *See Bradburg v. Segal,* 121 Me. at 149, 116 A. at 66–67. That Bakal's asserted interpretation is unsupportable is even more apparent when the statement is read in context, as it must be. *See Restatement (Second) of Torts* § 563 comment d. The context includes the entire letter containing the alleged libel as well as all the extrinsic circumstances of the letter as far as they were known to the recipient, here any person consulting the file in which the letter was placed. *Id.* comments d, e.

 In her letter Weare refers to previous water tests and notes that Bakal concerned himself with the current testing. There is no intimation that he ever physically threatened Weare or that she feared for her safety. Weare's letter is in the same file as the one from Bakal that prompted it, in which he reiterates his ongoing complaint of inadequate sewage treatment at the Cliff House. Taken together, these letters make it clear that there is an active, ongoing dispute about water treatment at the Cliff House. Various courts have found that epithets much stronger than the word "threats" here at issue cannot convey any defamatory meaning because they occur in the context of similarly heated public controversies. *See Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin,* 418 U.S. 264, 283–84, 94 S.Ct. 2770, 2780–81, 41 L.Ed.2d 745 (1974) ("traitor"); *Greenbelt Coop. Publishing Ass'n, Inc. v. Bresler,* 398 U.S. 6, 14, 90 S.Ct. 1537, 1541–42, 26 L.Ed.2d 6 (1970) ("blackmail"); *McCabe v. Rattiner,* 814 F.2d 839, 842–43 (1st Cir.1987) ("scam"); *Lukashok v. Concerned Residents of North Salem,* 160 A.D.2d 685, 554 N.Y.S.2d 39, 40 (2 Dept.1990) ("terrorism").

The current dispute is merely the latest round in the running controversies between these parties. It is significant to the context of the alleged libel that over the years the dispute has been at least three-cornered, including the Town of York's Selectmen, Planning Board, and Code Enforcement Officer in addition to the two private parties now before us. Over the years Bakal had not merely complained about various perceived violations of zoning and environmental laws but had three times brought suit against both Weare and officials of the Town of York. He had engaged in the aggressive language and litigation tactics of a determined adversary. Weare's statement would reasonably be taken by any recipient of publication of her letter as simply responding in kind.

As a matter of law the contested language of Weare's letter, particularly when read in the context of the whole letter and of the ongoing public dispute, does not convey a defamatory message to a reasonable reader. Weare and her corporation were thus entitled to summary judgment on Bakal's libel claim.

The entry is:

Judgment affirmed.

All concurring.