2000 ME 205

Joyce SCHOFF

v.

YORK COUNTY et al.

Supreme Judicial Court of Maine.

Argued Nov. 8, 2000.
Decided Nov. 29, 2000.

Stuart W. Tisdale, Esq., (orally), Tisdale & Davis, P.A., Portland, for plaintiff.

Michael E. Saucier, Esq., Portland, for defendants.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Joyce Schoff appeals from a judgment entered in the Superior Court (York County, *Fritzsche, J.*) granting the summary judgment motions of York County and Dennis Daniels on Schoff's claim for defamation. We affirm the judgment.

## I. FACTS

[¶ 2] Schoff is the mother of Steven Schoff. Steven had been indicted for murder and was being held at the York County Jail. On September 9, 1997, Steven appeared in Superior Court and changed his plea to guilty. Following his plea, he was taken back to the jail. Schoff visited Steven at the jail twice on that day. The first visit was during visiting hours, and she returned in the evening to retrieve a suit she had rented for him to wear to court. At the second visit, Schoff took a pair of new sneakers in a shoe box to the jail for Steven. Schoff handed the box containing the sneakers to a corrections officer, who took them into another room and searched them. The officer found three hacksaw blades and a tube of glue hidden in the shoes. Thereafter, Schoff was taken to an interview room where officers questioned her. She denied any knowledge of the hacksaw blades. Officers followed her home and conducted a consensual search of her home, but nothing was seized. No charges were brought against Schoff.

[¶ 3] The next day, jail officials and the Attorney General's office sought an order from the Superior Court to transfer Steven from the jail to the Department of Corrections on the grounds that he was dangerous and the Department of Corrections had a more secure facility than the county jail. *See* 30–A M.R.S.A. § 1656 (1996 & Supp.1999). The request was accompanied by an affidavit signed by Daniels who was the administrator of the York County Jail. Daniels' affidavit states that Schoff had come to the jail to deliver sneakers to Steven; that jail personnel inspected the sneakers and found hacksaw blades; and that damage to a cement wall in Steven's cell had been discovered. The Superior Court (*Mills, J.*) granted the transfer request.

[¶ 4] After the transfer order was issued, Daniels spoke to a reporter for the *Portland Press Herald* in the courthouse hallway. The following day, September 11, the *Portland Press Herald* published an article containing the information that Daniels had given the reporter. The article stated that Schoff went to the jail to deliver a pair of high-top sneakers; that jail officials made a routine inspection of the sneakers and found three hacksaw blades concealed under the insoles, two of which were 12 to 14 inches in length and a third blade that was half that length; that the glue underneath the insoles was wet; that Schoff had been advised of her right to speak with an attorney, but waived that right and was questioned by deputies; that she told the deputies she knew nothing about the blades; and that several of Schoff's relatives were being questioned by the police to determine who put the blades in the

shoes. The article quoted Daniels as saying that Schoff "appeared to have no knowledge." The remainder of the article contained background information regarding Steven, the murder charge, and Steven's appearance in court the day before. The following week two other newspapers carried stories about Schoff and the sneakers. The *Portland Press Herald* also ran a follow-up story a week later.

[¶ 5] Schoff brought this defamation action against Daniels and his employer, York County.[1] Schoff alleges that Daniels' statement to the reporter falsely imputed that she attempted to break her son out of jail.

## II. DEFAMATION

[¶ 6] In reviewing whether summary judgment should have been granted to a party, we view the evidence in the light most favorable to the party against whom the judgment was issued. *Selander v. Rossignol*, 1998 ME 216, ¶ 4, 717 A.2d 380, 381. We determine independently whether the record supports the conclusion that no genuine issue of material fact exists and whether the party is entitled to a judgment as a matter of law. *Id.*

[¶ 7] To prove defamation Schoff must establish that: (1) Daniels made a false and defamatory statement concerning her; (2) the statement was an unprivileged publication to·a third party; (3) Daniels was at least negligent in making the statement; and (4) the publication caused spe-

cial harm, or the statement was such that special harm need not be shown. *Lester v. Powers*, 596 A.2d 65, 69 (Me.1991); RESTATEMENT (SECOND) OF TORTS § 558 (1977).

[¶ 8] The focus in this case is on the first element. For purposes of the summary judgment motions the parties do not dispute what Daniels said to the reporter. Likewise, there is no dispute about the context in which the statement was made. The issue is whether the statement made by Daniels was false and defamatory.[2]

[¶ 9] It is not enough for Schoff to prove that Daniels made a defamatory statement.[3] The statement must also be false or carry a false implication. "One who publishes a defamatory statement of fact is not subject to liability for defamation if the statement is true." RESTATEMENT (SECOND) OF TORTS § 581A (1977).

[¶ 10] Although it is generally accepted that there is no liability for a true statement, we have allowed true but incomplete statements to fulfill the falsity requirement, thus forming the basis for liability in a defamation action when those statements falsely impute criminal conduct to the plaintiff. In *Marston v. Newavom*, 629 A.2d 587 (Me.1993), for example, the defendants were liable for making a statement to others about the plaintiff which was true but falsely imputed dishonesty to her. In that case, however, the defendants failed to tell the whole story and

1. Schoff originally named other defendants, and the complaint contained a claim for violation of her civil rights which stemmed from her detention at the jail and the search of her home. Schoff voluntarily dismissed several of the defendants from the case, and summary judgment was granted to the remaining defendants on the civil rights claim. Schoff has not appealed that portion of the summary judgment, and the only defendants remaining in the case are Daniels and York County.

2. Whether a statement is capable of bearing a defamatory meaning is a question of law. *Bakal v. Weare*, 583 A.2d 1028, 1030 (Me. 1990); RESTATEMENT (SECOND) OF TORTS § 614 (1977). If a court determines that the state-

ment is capable of bearing a defamatory meaning, the matter goes to the factfinder to determine if the statement was understood by the recipient as defamatory. RESTATEMENT (SECOND) OF TORTS § 614 (1977).

3. "A communication is defamatory 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Bakal*, 583 A.2d at 1029 (quoting RESTATEMENT (SECOND) OF TORTS § 559 (1977)). In determining whether a statement is defamatory, the statement must be interpreted in its context, which includes the entire publication and all extrinsic circumstances known to the recipient. *Id.* at 1030.

omitted material facts. The statement made by defendants to plaintiff's co-workers was that the plaintiff, an employee of the defendant company, had charged personal expenses to the company's credit card. *Id.* at 589. It was true that the plaintiff had done so, but it was also true that it was accepted practice for certain employees to charge personal items on the company credit card as long as they paid the company promptly. *Id.* The statement about the plaintiff was true, but it was a partial truth and as such was capable of carrying a defamatory meaning to those who heard the statement by falsely implying that the plaintiff was dishonest.

■ [¶ 11] Cases from other jurisdictions also hold that true statements can form the basis of liability for defamation when the omission of additional information renders the true statement false and defamatory. *See Toney v. WCCO Television, Midwest Cable and Satellite, Inc.,* 85 F.3d 383, 387, 392, 395 (8th Cir.1996) (applying Minnesota law); *Memphis Publ'g Co. v. Nichols,* 569 S.W.2d 412, 420 (Tenn. 1978). Defamation claims of this type come under the rubric of implied defamation, and they are limited to situations where there is a material omission of facts or where a series of facts are juxtaposed in an artificial manner so as to imply defamatory conduct by the plaintiff. *See Toney,* 85 F.3d at 387; W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 116 (5th ed. Supp.1988).

■ [¶ 12] In this case, Schoff does not claim that any material facts were omitted by Daniels, nor does she articulate any juxtaposition of true statements that create a false implication. True statements cannot give rise to a defamation action unless the speaker or publisher of the statement omitted other true information which if stated would dispel the defamatory sting, or phrased and arranged the true statements in such a way as to give them a false and defamatory meaning. Not only did Daniels not omit any information, or make any artificial juxtaposition of facts, he negated any false implication by stating

that Schoff had denied any knowledge of the hidden hacksaw blades and by stating that she did not appear to have any knowledge.

[¶ 13] Summary judgment was appropriately granted to Daniels and York County, and for this reason we need not discuss the remaining issues of privilege, fault, and immunity for a discretionary act of a governmental official.

The entry is:

Judgment affirmed.