STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & COUNSUMER DOCKET
DOCKET NO. BCD-CV-18-22

WILLIAM LIVEZEY,               )
                               )
        Plaintiff,             )
                               )
    v.                         )        ORDER ON DEFENDANT'S MOTION
                               )        TO DISMISS
MTM ACQUISITION, INC., d/b/a/  )
MAINETODAY MEDIA,              )
                               )
        Defendant.             )

This matter is before the Court on Defendant MTM Acquisition, Inc., d/b/a/ MaineToday Media's ("MTM") motion to dismiss the Complaint pursuant to M.R. Civ. P. 12(b)(6). Plaintiff William Livezey opposes the motion. The Court heard oral argument on the motion on August 28, 2018. MTM was represented by Jonathan Piper, Esq. and Mr. Livezey was represented by Stephen Whiting, Esq.

## BACKGROUND

This claim arises from MTM's reporting on Mr. Livezey's conduct as an undercover law enforcement officer in connection with a two-year sting operation in Allagash. Mr. Livezey was an undercover operative with the Maine Warden Service from 1996 to 2016. (Pl's Compl. ¶¶ 6-7.) In 2012, he began a covert investigation of suspected poaching in Allagash. (Pl's Compl. ¶ 9.) There were three primary targets of Mr. Livezey's investigation, and he ingratiated himself with the primary targets and their associates. (Pl's Compl. ¶¶ 10-11.) Mr. Livezey's investigation resulted in arrests, prosecutions, and convictions. (Pl's Compl. ¶¶ 15-16.)

Beginning on May 8, 2016, MTM published an investigative series of at least twenty-six articles on the Maine Warden Service, including the Allagash prosecutions and prior undercover

1

investigations Mr. Livezey conducted throughout his career. (Pl's Compl. ¶¶ 25-56.) Mr. Livezey alleges that those articles included twelve untrue statements about him, which are explained in more detail below. (Pl's Compl. ¶¶ 28-29, 31.) Mr. Livezey also alleges that eight of the statements misrepresented the contents of a 2006 Maine Supreme Judicial Court opinion regarding a prior investigation by Mr. Livezey in 2003: *State v. Perry*, 2006 ME 76, 899 A.2d 806. (Pl's Compl. ¶¶ 30-31.)

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), courts "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.* "The legal sufficiency of a complaint challenged pursuant to M.R. Civ. P. 12(b)(6) is a question of law" and thus subject to de novo appellate review. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141.

## DISCUSSION

MTM's primary argument is that Mr. Livezey has failed to allege "actual malice" on the part of MTM, which the Supreme Court of the United States has held to be an essential element of defamation claims brought by "public figures." (Mot. Dismiss 6-8.) Mr. Livezey responds that he "alleges over half a dozen times that the Defendant's statements were made 'maliciously, with known falsity and reckless disregard for the truth.'" (Opp'n Mot. Dismiss 2.)

2

The parties agree that Mr. Livezey is a "public figure" under Maine law. *See Roche v. Egan*, 433 A.2d 757, 762 (Me. 1981). (Mot. Dismiss 7; *see* Opp'n Mot. Dismiss 1-3.) "Discussion of public officials and public figures on matters of public concern . . . deserves special favor in a democratic society, and thus such discussion is subject to a conditional privilege—the 'First Amendment privilege'—that can be overcome only by clear and convincing evidence of knowledge or disregard of falsity." *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991) (citing *New York Times v. Sullivan*, 376 U.S. 254, 279-80, 285-86 (1964)). "Actual malice" in this context is a term of art specific to defamation cases and means that a false statement was made "with knowledge that it was false of with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 280; *see also Lester*, 596 A.2d at 69 n.7.

MTM argues that Mr. Livezey merely recites the legal standard for actual malice without pleading any facts that, if true, would support the claim. Mr. Livezey responds that general allegations that the statements were made maliciously, with known falsity and reckless disregard for the truth, is sufficient to survive a motion to dismiss. In the alternative, Mr. Livezey argues that taken as true, and in a light most favorable to him, the allegations support a finding of actual malice.

Mr. Livezey's first argument is without merit. To survive a motion to dismiss, "[t]he complaint must allege facts with sufficient particularity so that, if true, they give rise to a cause of action; merely reciting the elements of a claim is not enough." *America v. Sunspray Condo. Ass'n*, 2013 ME 19, ¶ 13, 61 A.3d 1249, *see also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56-57 (1st Cir. 2012). If there are no factual allegations to support the conclusion that MTM acted with actual malice, then the Complaint should be dismissed, regardless of Mr. Livezey's

3

characterization of MTM's employees' states of mind when MTM published the allegedly false statements about Mr. Livezey. *See Schatz*, 669 F.3d at 56.

The Court next turns to the Complaint to determine whether the factual allegations therein, taken as true, could support a finding that MTM acted with actual malice. In so doing, the Court considers not only the allegations in the Complaint but also the series of Maine Sunday Telegram articles on which Mr. Livezey's Complaint is based, attached to MTM's motion as Defendant's Exhibit 1. *See Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 11, 843 A.2d 43 ("[D]ocuments that are central to the plaintiff's claim, and documents referred to in the complaint may be properly considered on a motion to dismiss without converting the motion to one for a summary judgment when the authenticity of such documents is not challenged."); *see also Schatz*, 669 F.3d at 56.

The first allegedly defamatory statement is that Mr. Livezey "heard a lot of talk about poaching, but he never caught either [primary target of the investigation] actually doing it." (Pl's Compl. ¶ 31.a.) Mr. Livezey points out that he earlier alleged that he "observed more than three hundred . . . wildlife crimes committed by the Primary Targets of the investigation" and that his investigation resulted in numerous convictions. (Pl's Compl. ¶¶ 12, 20.) Mr. Livezey argues that these latter two allegations show that MTM's employees knew that the statement that "he never caught either man actually [poaching]" was false, and yet MTM published it anyway.

The Court disagrees. The allegations in Paragraphs Twelve and Twenty of the Complaint could not support a finding that MTM acted with actual malice when it published the statement in Paragraph 31, subparagraph a. At most, they could establish the falsity of the published statement, not MTM's knowledge of its falsity. Furthermore, as MTM points out on page 2 of its rebuttal brief, the statements are not necessarily even factually inconsistent. "Poaching" is not synonymous

4

with "wildlife crimes," and the convictions could have resulted whether or not Mr. Livezey personally observed poaching.

Mr. Livezey next points to the following three allegedly defamatory statements, which show that MTM's reporters read Mr. Livezey's reports. (Pl's Compl. ¶¶ 31.b-31.d.) Mr. Livezey alleges earlier in the Complaint that he "made detailed contemporaneous reports of his investigation." (Pl's Compl. ¶ 13.) In defending against this motion to dismiss, Mr. Livezey claims that because MTM's journalists read his reports, they must have known that the statements in Paragraph 31, subparagraphs a. through d. were not true based on what was in those reports. However, even if MTM published a statement that was inconsistent with what was in Mr. Livezey's report, this does not show that MTM's journalists knew that the published statement was false or were recklessly indifferent to its truthfulness. The articles and the Complaint make clear that Mr. Livezey's reports were not MTM's only sources. (Pl's Compl. ¶¶ 24-25; Def's Ex. 1.) At most, these published statements show that MTM's journalists did not accept everything in Mr. Livezey's reports as true.

The last eight allegedly defamatory statements in the Complaint refer to an opinion of the Maine Supreme Judicial Court sitting as the Law Court: *State v. Perry*, 2006 ME 76, 899 A.2d 806. (Pl's Compl. ¶¶ 31.e-31.*l*.) Mr. Livezey alleges that the articles "repeatedly and maliciously, with known falsity and a reckless disregard for the truth, patently misstated and misrepresented the contents of [the opinion] regarding a prior investigation by Plaintiff in 2003 in Oxford County, Maine." (Pl's Compl. ¶ 30.) The complained-of language is some variation of: "The court ruled that Livezey's behavior in an Oxford County undercover operation might have been 'repugnant,' but 'not so outrageous' that all criminal charges against the man targeted in that investigation should be dismissed." (Pl's Compl. ¶ 31.e; *see* Pl's Compl. ¶¶ 31.e-31.*l*.)

5

These allegations show that at most MTM reporters misinterpreted what the *Perry* opinion says. The actual language from *Perry* is as follows:

> We have acknowledged that there may be cases in which government officers are so enmeshed in the criminal activity that the prosecution of another participant in that activity might be "repugnant to our concept of criminal justice." *State v. Smith*, 615 A.2d 1162, 1165 (Me. 1992). The warden's activities here were clearly designed to ingratiate himself with Perry and Perry's friends and clients so that he could personally observe violations of the fish and wildlife laws. His testimony was replete with instances of how he attempted to avoid committing a crime personally. We are not convinced that the warden's conduct was so outrageous that due process requires a dismissal of all charges.

*State v. Perry*, 2006 ME 76, ¶ 27, 899 A.2d 806. The *Perry* opinion quotes *Smith*, 615

A.2d at 1165 (quoting *United States v. Russell*, 411 U.S. 423, 428, 431-32 (1973)):

> When government investigators are enmeshed in the criminal activity for which the defendant is prosecuted, the prosecution of that defendant is repugnant to our concept of criminal justice. This defense, however, is available only when the "conduct of law enforcement agents is so outrageous due process principles would absolutely bar the Government from invoking judicial processes to obtain a conviction."

The Law Court's holding in *Perry* would be ambiguous to a layperson, and a person trained in legal research would understand that reading the citation to *Smith* is important to resolve that ambiguity. While the complained-of language may be an error in legal interpretation, journalists cannot be held to the same standard as a lawyer, judge, or legal scholar. *See Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971) ("Time[ ] . . . adopt[ed] one of a number of possible rational interpretations of a document that bristled with ambiguities. The deliberate choice of such an interpretation, though arguably reflecting a misconception, was not enough to create a jury issue of 'malice' under *New York Times*.") Mr. Livezey alleged that MTM acted "maliciously, with

6

known falsity and a reckless disregard for the truth" in interpreting a legal opinion of the Law Court that would be ambiguous to a layperson, but does not allege any facts to support that conclusion. Even if "the decision does not say what the Defendant purported to quote it to say," it does not necessarily follow that "Defendant . . . must have made up those quotes, and knowingly or recklessly falsified its reports[ ]" in the absence of any further allegations bearing on MTM's reporters' states of mind.¹ (Opp'n Mot. Dismiss 3.)

In sum, Mr. Livezey has failed to plead facts that could support a finding that MTM published the allegedly defamatory statements with "actual malice," that is, with knowledge that the statements were false or with reckless disregard of whether they were false or not. As this is an essential element to a public figure's defamation claim, Mr. Livezey's Complaint should be dismissed.

## CONCLUSION

Based on the foregoing it is hereby ORDERED:

That Defendant MTM's motion to dismiss is GRANTED. Plaintiff William Livezey's Complaint is dismissed.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

---

¹ Furthermore, it is unlikely that the statements in Pl's Compl. ¶¶ 31.e-31.*l.* are defamatory. With the exception of ¶ 31.h, MTM described the Law Court as "finding" or "ruling" that Mr. Livezey's behavior "may" or "might" have been "repugnant." Not only do MTM's journalists (who presumably are not lawyers) condition their interpretation of the Law Court's holding, but many courts have held that words like "repugnant" cannot be actionable in any event. *See Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F. 3d 122, 129 (1st Cir. 1997) ("trashy"); *Fleming v. Benzaquin*, 454 N.E.2d 95, 99 n.7, 100 (Mass. 1983) ("reprehensible"); *Hickey v. Capital Cities*, 792 F. Supp. 1195, 1199 (D. Or. 1992) (applying Oregon law) ("repulsive").

7

Dated: 9/21/18

M. Michaela Murphy
Justice, Business and Consumer Court

Entered on the Docket: 9/21/18
Copies sent via Mail___ Electronically ✓

8

STATE OF MAINE                                    BUSINESS & COUNSUMER DOCKET
CUMBERLAND, ss.                                   DOCKET NO. BCD-CV-18-22

WILLIAM LIVEZEY,                         )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )        COMBINED ORDER ON PLAINTIFF'S
                                         )        MOTION FOR RECONSIDERATION
MTM ACQUISITION, INC., d/b/a/            )        AND MOTION TO AMEND
MAINETODAY MEDIA,                        )
                                         )
        Defendant.                       )

Pending before the Court are Plaintiff William Livezey's motion for reconsideration and motion to amend complaint. The Defendant, MTM Acquisition, Inc., d/b/a MaineToday Media ("MTM") opposes both motions. Mr. Livezey is represented by Stephen Whiting, Esq. and MTM is represented by Jonathan Piper, Esq., Sigmund Schutz, Esq., and Benjamin Piper, Esq. Pursuant to its discretionary authority under M.R. Civ. P. 7(b)(7) the Court elects to decide the motions without holding oral argument.

## BACKGROUND

Mr. Livezey filed a complaint (the "Complaint) against MTM for libel and defamation based on its reporting on his conduct investigating wildlife crimes undercover in Allagash, Maine between 2012 and 2014. MTM did not answer the Complaint, instead filing a motion to dismiss for failure to state a claim pursuant to M.R. Civ. P. 12(b)(6). Mr. Livezey opposed the motion to dismiss on its merits, but did not bring a motion to amend the Complaint. On September 21, 2018, this Court entered its order granting MTM's motion to dismiss (the "Prior Order") on the grounds that the Complaint failed to plead facts that could support a finding that MTM published the allegedly defamatory statement with "actual malice," an essential element to a defamation claim brought by a "public figure" like Mr. Livezey. *See, e.g., Roche v. Egan*, 433 A.2d 757, 762 (Me.

1

1981). Mr. Livezey thereafter brought the two motions now under consideration and filed a proposed amended complaint (the "Amended Complaint.")

## DISCUSSION

### I. Plaintiff's Motion for Reconsideration

"A motion for reconsideration of the judgment shall be treated as a motion to alter or amend the judgment." M.R. Civ. P. 59(e). Courts should order relief pursuant to M.R. Civ. P. 59(e) when it is "reasonably clear that prejudicial error has been committed or that substantial justice has not been done." *Cates v. Farrington*, 423 A.2d 539, 541 (Me. 1980). Under M.R. Civ. P. 7(b)(5), a motion for reconsideration "shall not be filed unless required to bring to the court's attention an error, omission, or new material that could not previously have been presented." "Rule 7(b)(5) is intended to deter disappointed litigants from seeking 'to reargue points that were or could have been presented to the court on the underlying motion.'" *Shaw v. Shaw*, 2003 ME 153, ¶ 8, 839 A.2d 714 (quoting M.R. Civ. P. 7(b)(5) advisory committee's notes to 2000 amend., 3A Harvey & Merritt, *Maine Civil Practice* 270 (3d, 2011 ed.)). A trial court's ruling on a motion for reconsideration is reviewable for an abuse of discretion. *Shaw*, 2003 ME 153, ¶ 12, 839 A.2d 714.

Mr. Livezey's stated grounds for reconsideration of the Prior Order is that he subsequently filed a motion to amend his complaint, along with a proposed amended complaint, and that the Amended Complaint alleges sufficient facts to support his claims. (Pl's Mot. Reconsideration ¶¶ 2-4.) Mr. Livezey's motion does not bring to the Court's attention an error, omission, or new material that could not previously have been presented; nor does it claim that prejudicial error has been committed or that substantial justice has not been done.[1] The Court therefore concludes that

---

[1] The Court infers that Mr. Livezey brought the motion for reconsideration not to argue that the motion to dismiss was wrongly decided, but rather as a procedural mechanism to enable the Court to consider his motion to amend complaint given that an order dismissing a complaint pursuant to M.R. Civ. P. 12(b)(6) is generally with prejudice. *See Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 1998 ME 70, ¶ 9, 708 A.2d 283. However, as explained in more detail

2

there is no basis for reconsideration of the Prior Order and Mr. Livezey's motion for reconsideration is DENIED.

## II. Plaintiff's Motion to Amend Complaint

As a threshold matter, MTM claims that the Court need not reach the merits of Mr. Livezey's motion to amend complaint because the Prior Order dismissed Mr. Livezey's Complaint with prejudice and he did not move to amend his complaint until after that dismissal. Mr. Livezey responds that it is reversible error for a court to deny a plaintiff's motion to amend his complaint after granting a Rule 12(b)(6) motion to dismiss.

The general rule is that a "Rule 12(b)(6) dismissal is technically an adjudication on the merits and is with prejudice." *Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 1998 ME 70, ¶ 9, 708 A.2d 283. However, that general rule is subject to an important caveat: "unless, as is usually the case, leave is granted to amend the complaint." *Id.* (quoting *Dutil v. Burns*, 1997 ME 1, ¶ 5, 687 A.2d 639). Put simply, "[a] dismissal under Rule 12(b)(6) is technically an adjudication on the merits under Rule 41(b)(3). It ordinarily does not have this effect, however, because leave to amend is freely granted under Rule 15(a)." 2 Harvey & Merritt, *Maine Civil Practice*, § 12:11 at 422 (3d, 2011 ed.).

MTM argues that because Mr. Livezey did not formally move to amend his complaint until after the Court's ruling on MTM's motion to dismiss, that he is now foreclosed from amending the Complaint because the entire case was dismissed with prejudice. Generally, the common practice in this Court is for a plaintiff to bring a motion to amend her complaint in conjunction with her opposition to a defendant's Rule 12(b)(6) motion to dismiss. When this procedure is followed, the rule is well-established: "a trial court should ordinarily rule on a motion to amend

---

below, the Court need not grant the motion for reconsideration in order to consider Mr. Livezey's motion to amend complaint on its merits.

3

before acting on a motion that could be dispositive of the original complaint." *Sherbert v. Remmel*, 2006 ME 116, ¶ 8, 908 A.2d 622. Although Mr. Livezey did not formally move to amend his complaint or file a proposed amended complaint before the Prior Order was entered, in his opposition to MTM's motion to dismiss, Mr. Livezey did argue that "if the Court concludes that the Complaint needs to contain more supporting facts, the Plaintiff's claims should not be dismissed, but rather the Plaintiff should be given an opportunity to amend his Complaint." (Pl's Opp'n Mot. Dismiss 4.)

The Court concludes that although its dismissal of Mr. Livezey's complaint was technically an adjudication on the merits and with prejudice, he should nonetheless be allowed an opportunity to amend his complaint. *See* 2 Harvey & Merritt, *Maine Civil Practice*, § 15:3 at 478 (3d, 2011 ed.) ("After judgment on dismissal of a complaint for failure to state a claim, the right to amend depends upon leave of court, but the admonition to allow amendment 'freely' still applies."). *See also Barkley v. Good Will Home Asso.*, 495 A.2d 1238, 1240 (Me. 1985) (citing M.R. Civ. P. 15(a) for the proposition that "leave [to amend] shall be freely given when justice so requires" even after dismissal and holding that in the absence of "evidence of bad faith or dilatory motives" on the part of the plaintiffs, or undue prejudice to the defendant, that denying the plaintiffs an opportunity to amend their complaint was an abuse of discretion). Here, there is nothing suggesting bad faith or dilatory motives on Mr. Livezey's part. There is likewise no undue prejudice to MTM, as MTM also argues in its opposition memorandum that the Amended Complaint does not state a claim for defamation. The Court thus treats MTM's substantive opposition to Mr. Livezey's motion to amend complaint as a motion to dismiss the Amended Complaint under M.R. Civ. P. 12(b)(6) and proceeds to determine whether the Amended Complaint states a claim for defamation.

"The plaintiff in a defamation case must prove that the published statements made were

4

defamatory, meaning that the statements harmed his reputation so as to lower him in the estimation of the community." *Schoff v. York County*, 2000 ME 205, ¶ 9 n.3, 761 A.2d 869. (quotation omitted). "Moreover, the plaintiff must prove that the defamatory statements are false." *Id.*, ¶ 9. "[W]ords that on their face without further proof or explanation injure the plaintiff in his business or occupation . . . are defamatory per se." *Ramirez v. Rogers*, 540 A.2d 475, 478 (Me. 1988).

Furthermore, Mr. Livezey is a "public figure" under Maine law. *See Roche v. Egan*, 433 A.2d 757, 762 (Me. 1981). "Discussion of public officials and public figures on matters of public concern . . . deserves special favor in a democratic society, and thus such discussion is subject to a conditional privilege—the 'First Amendment privilege'—that can be overcome only by clear and convincing evidence of knowledge or disregard of falsity." *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991) (citing *New York Times v. Sullivan*, 376 U.S. 254, 279-80, 285-86 (1964)). "Actual malice" in this context is a term of art specific to defamation cases and means that a false statement was made "with knowledge that it was false of with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 280; *see also Lester*, 596 A.2d at 69 n.7.

In the Amended Complaint, Mr. Livezey clarifies that he is not necessarily claiming that MTM's statements about his behavior during the investigation were made with actual malice, but rather that MTM's statements claiming that Mr. Livezey's own reports reference this behavior were made with actual malice. For example, an allegedly defamatory statement is that "Livezey

---

[1] The Amended Complaint reiterates that the statement "Livezey heard a lot of talk about poaching, but he never caught either man actually doing it" is defamatory and was made with actual malice. (Am. Compl. ¶ 31, 53-54.) However, beyond the bald allegation that MTM's journalist acted with actual malice, the Amended Complaint still does not allege any facts that could support such a finding. As the Court previously concluded in the Prior Order, as a matter of law, the mere fact that the statement is inconsistent with Mr. Livezey's reports (*see* Am. Compl. ¶¶ 33-52) cannot establish that the statement was made with actual malice. (Prior Order at 4-5.) *Cf. Tucci v. Guy Gannet Pub. Co.*, 464 A.2d 161, 170 (Me. 1983) ("Negligent investigative reporting alone does not constitute actual malice[.]").

would spend 40 days in Allagash . . . according to his own reports—doing his best to tempt locals into violating fish, game and other laws." (Am. Compl. ¶ 58.) Mr. Livezey then alleges that "nowhere in his own reports did the Plaintiff state that he was 'doing his best to tempt locals into violating fish, game and other laws.'" (Am. Compl. ¶ 60.) This allegation, if proven, could establish that MTM's employee knowingly and intentionally—or with reckless disregard as to it veracity—published a false statement, if what MTM published was indeed inconsistent with what is in his reports. (Am. Compl. ¶ 61.) One other allegedly defamatory statement similarly characterizes Mr. Livezey's reports themselves, as opposed to merely reporting on his behavior during the investigation generally: "The agent's own reports say he gave a target a firearm and ammunition—and that he even killed a deer in the target's presence—in an effort to entice him poach." (Am. Compl. ¶ 66.)

Mr. Livezey's reports were not presented to the Court when it decided the motion to dismiss, and the Court therefore accepted Mr. Livezey's allegations with regards to those reports as true. *See Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830. MTM attached the reports to its opposition to Mr. Livezey's instant motion to amend, as they are "documents that are central to the plaintiff's claim[] and . . . referred to in the complaint [and] the authenticity of [the] documents is not challenged." *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 11, 843 A.2d 43.² Having reviewed the reports the Court concludes that Mr. Livezey cannot prove by clear and convincing evidence, as a matter of law, that MTM's employee knowingly and intentionally—or with reckless disregard—published a false statement when it published the two statements reproduced above about Mr. Livezey's reports.

Mr. Livezey points out that this is a motion for summary judgment, and the issue of MTM's

---

² As noted above, the Court treats MTM's substantive opposition as a motion to dismiss the Amended Complaint.

6

employee's state of mind is a question of fact. *See Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141 ("When the trial court acts on a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6), facts are not adjudicated"). "[A]s a general proposition, questions concerning the state of mind a person had when he performed a particular act" are factual questions to be answered by a jury. *Geary v. Stanley Med. Res. Inst.*, 2008 ME 9, ¶ 20, 939 A.2d 86. However, this general proposition can be abrogated in "special case[s]" where a "definitive standard" has been established by which to judge a person's conduct. *Id.* ¶¶ 20-21. The "actual malice" standard announced in *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964) and adopted by our Law Court in *Michaud v. Livermore Falls*, 381 A.2d 1110, 1112-13 (Me. 1978) is such a "definitive standard." *See Tucci v. Guy Gannet Pub. Co.*, 464 A.2d 161, 170 (Me. 1983) (affirming summary judgment for defendant in defamation case where jury could not reasonably infer actual malice as a matter of law).

In *Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971), the United States Supreme Court held that because "Time[ ] . . . adopt[ed] one of a number of possible rational interpretations of a document that bristled with ambiguities[,] [t]he deliberate choice of such an interpretation, though arguably reflecting a misconception, was not enough to create a jury issue of 'malice' under *New York Times*." MTM's journalist's interpretation of Mr. Livezey's reports is analogous to that of Time's journalist's interpretation of a government report in *Time, Inc.*, where the Supreme Court justified the rational interpretation "safe harbor" on the grounds that the actual malice requirement applies

> . . . with even greater force to the situation where the alleged libel consists in the claimed misinterpretation of the gist of a lengthy government document. Where the document reported on is so ambiguous as this one was, it is hard to imagine a test of "truth" that would not put the publisher virtually at the mercy of the unguided discretion of a jury.

7

*Id.*, 401 U.S. at 291. In that case, the Supreme Court was concerned that anything less than a strict application of the actual malice requirement would

> . . . compel[] the critic of official conduct to guarantee the truth of all his factual assertions—and to do so on pain of libel judgments virtually unlimited in amount—lead[ing] to . . . "self-censorship." Allowance of the defense of truth, with the burden of proving it on the defendant, does not mean that only false speech will be deterred . . . . [W]ould-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so.

*Id.* at 290 (quoting *N.Y. Times Co.*, 376 U.S. at 279. This Court shares those concerns, and determines that dismissal of Mr. Livezey's Amended Complaint is necessary to maintain the First Amendment protections established by the United States Supreme Court and our Law Court. *See Time, Inc.*, 401 U.S. 279; *N.Y. Times Co.*, 376 U.S. 254; *Lester*, 596 A.2d 65; *Tucci*, 464 A.2d 161; *Roche*, 433 A.2d 757; *Michaud*, 381 A.2d 1110.

Mr. Livezey's investigative reports are replete with examples of behavior that could be rationally interpreted as efforts to entice his targets to commit wildlife crimes. In his reports, Mr. Livezey recorded that he told one target that he would buy a large buck deer from him and then later "told [him] that if he saw a big buck, to kill it" so that Mr. Livezey could buy it from him. (Def's Ex. 1 at 16, 32.) Elsewhere, Mr. Livezey reports that he provided a target with his rifle, sometimes loading it with his own ammunition, during night hunting expeditions. (Def's Ex. 1 at 67, 72, 80.) Mr. Livezey's reports also describe how he shot and killed a deer "too small to register" from a vehicle while "night hunting" with a target. (Def's Ex. 1 at 70.) MTM cites several more examples from Mr. Livezey's reports in its memorandum that could be rationally interpreted as efforts to entice his targets to commit wildlife crimes. (Def's Opp'n Mot. Amend 5-6.) The Court

8

thus concludes as a matter of law that no reasonable juror could determine that the allegedly defamatory statements found at paragraphs sixty-one and sixty-six of the Amended Complaint are anything less than rational interpretations of what is included in those reports.

Finally, the Amended Complaint includes additional allegations surrounding MTM's statements with regards to an opinion of the Maine Supreme Judicial Court sitting as the Law Court: *State v. Perry*, 2006 ME 76, 899 A.2d 806. In his reply memorandum, Mr. Livezey claims that the Amended Complaint now states a claim for defamation as to those statements because they misrepresent what the Law Court actually said. Mr. Livezey also alleges an additional defamatory statement in MTM's reporting on the *Perry* opinion. (Pl's Am. Compl. ¶ 75.)

In essence, Mr. Livezey's argument as to these statements merely rehashes what he previously argued in opposition to MTM's first motion to dismiss—an argument this Court already rejected. (Prior Order at 5-7.) The Court is not inclined to revisit that argument and merely reiterates that even if MTM's statements misrepresent what the *Perry* opinion actually says, no reasonable juror could determine that they are not rational interpretations of the *Perry* opinion, and the statements are thus insufficient to create a jury issue of actual malice under *New York Times Co.*, 376 U.S. 254. *See Time, Inc.*, 401 U.S. at 290.

## CONCLUSION

Based on the foregoing it is hereby ordered:

1. Plaintiff William Livezey's motion for reconsideration is DENIED.

2. Plaintiff William Livezey's motion to amend complaint is GRANTED; however, the Amended Complaint is DISMISSED for failure to state a claim for which relief may be granted.

9

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference, M.R. Civ. P. 79(a).

Dated: 1/4/19

M. Michaela Murphy
Justice, Business and Consumer Court

Entered on the Docket: 1/7/19
Copies sent via Mail___Electronically ✓

10